[No. 1,065.]

THE STATE OF NEVADA, EX REL. G. A. RANKIN, DISTRICT ATTORNEY OF WASHOE COUNTY, *v.* B. F. LEETE, RESPONDENT.

STOCKHOLDER IN CORPORATION—WHAT CONSTITUTES.—G., sen., owned certain shares of stock in a corporation organized for the purpose of maintaining a ditch, etc.; he gave them to his son with the request that new certificates should be issued in his son's name, and transferred upon the books of the company. This request was complied with. The son paid nothing for the stock, the transfer being made in order that his son might be eligible to the office of trustee: *Held,* upon a review of the statutes of this state, that such a transaction constituted the son a stockholder in the corporation, and made him elegible to the office of trustee. (BELKNAP, J., dissenting.)

IDEM.—Under the statutes of this state a person who "holds" shares of stock, issued in his name, is recognized as a stockholder as well as one who "owns" them.

APPLICATION for *quo warranto.*

The facts are stated in the opinion.

*Thomas E. Haydon* and *G. A. Rankin,* for Relator:

I. The burden of proof was on defendant to establish his right to the office. (Ang. & Ames on Corp., sec. 756; *State* v. *Haskell,* 14 Nev. 210; High on Rem., sec. 629.)

II. The court did not err in striking out Gulling's evidence. The fact that the shares stood in the son's name by the consent of his father, entitled him to vote the stock. (*Bercich* v. *Marye*, 9 Nev. 316; *State ex rel. Pettinelli*, 10 Id. 144; Ang. & Ames on Corp., secs. 131, 132; Green's Brice's Ultra Vires, 126; *State* v. *Ferris*, 42 Conn. 560; *Gilbert* v. *Manchester Iron Works*, 11 Wend. 627; *Downing* v. *Potts*, 3 Zab. 66; *Union Bank* v. *Laird*, 2 Wheat. 390; *Shaw* v. *Spencer*, 100 Mass. 382; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 599; *Ex parte Holmes*, 5 Cow. 426; *Ex parte Wilcocks*, 7 Id. 402; *In re Barker*, 6 Wend. 509; *Merchants' Bank* v. *Cook*, 4 Pick. 405; *Hoppin* v. *Buffum*, 9 R. I. 513.)

III. Lee, as executor of Larcombe's estate, had a clear right to vote. (2 Comp. L. 3399; *Matter of North Shore etc. Co.*, 63 Barb. 571; *People* v. *Tibbetts*, 4 Cow. 364; *Bailey* v. *Hollister*, 26 N. Y. 112; *Middlebrook* v. *Bank*, 3 Keys, 135; Field on Corp., secs. 70, 71.

*Lindsey & Dickson*, for Respondent:

I. The court erred in ruling that the burden of proof was upon respondent. (*State* v. *Hunton*, 28 Vt. 594; *People* v. *Lacoste*, 37 N. Y. 192; *State* v. *Brown*, 34 Miss. 688; *State* v. *Kupferle*, 44 Mo. 154; 1 Comp. L. 394.) Respondent was once lawfully in the office. (14 Nev. 209.) The court erred in withdrawing the testimony of Gulling from the jury. (Authorities cited are found in the opinion of the court.)

II. The court erred in holding that John Lee, as executor of the Larcombe estate, could give a proxy to represent the stock belonging to that estate. (*Sebastian* v. *Johnston*, 72 Ill. 282; *Wilson* v. *Dennison*, 1 Ambl. 86; *Hawkins* v. *Kemp*, 3 East. 410; *Heyer* v. *Deaves*, 2 Johns. Ch. 154; *Tainter* v. *Clark*, 13 Met. 226; *Cole* v. *Wade*, 16 Ves. jun. 27; *St. Clair* v. *Jackson*, 8 Cow. 575; *Hawley* v. *James*, 5 Paige, 318; *Bulteel* v. *Abinger*, 6 Jur. 410; *Belote* v. *White*, 2 Head, 710; *Hunt* v. *Douglas*, 22 Vt. 130; *Burger* v. *Duff*, 4 Johns. Ch. 369.)

By the Court, LEONARD, C. J.:

The Orr Water Ditch company is a corporation, duly incorporated under the laws of this state, for the purpose of

constructing, keeping in repair, maintaining, and operating a ditch for the conducting of water from the Truckee river, in Washoe county, to farming lands therein, for irrigating and domestic purposes. On and prior to January 8, 1881, respondent was a stockholder in said corporation, and the duly elected trustee and secretary thereof. On the date just mentioned an election was held by the stockholders of the corporation, for the purpose of electing five trustees for the period of one year from February 1, 1881. There were two hundred and forty-eight votes in the corporation, and at that election two hundred and thirty-four votes were cast, of which, respondent, Frazer, and Manning received one hundred and nine votes each, and Charles Gulling, James Galt, and A. J. Smith one hundred and twenty-five each, one hundred and seven of which respondent admits were legal, but denies the legality of eight votes cast by Smith for himself, Galt, and Gulling, and ten votes cast for the same persons by Haydon, proxy for Lee, executor of the estate of Larcombe, deceased. Plaintiff admits that the one hundred and nine votes cast for respondent were legal. If the eight votes cast by Smith, or the ten votes by Haydon were legal, it follows that respondent was not elected, and that Smith, Galt, and Gulling were elected. The five persons declared elected directors were Haydon, Powell, Galt, Smith, and Gulling. As to the first two, there is no contention. After the election the five persons just named met as trustees, and Gulling was elected secretary of the board. He demanded of respondent the books, papers, and property belonging to the secretary's office, but compliance was refused, and this proceeding by information in the nature of a *quo warranto* was instituted in this court. Plaintiff demands judgment to the effect that respondent, is not entitled to the offices of trustee and secretary of said corporation; that he be ousted therefrom, and that Gulling be put in possession thereof, and of all books, papers, and property of the corporation appertaining to said offices of trustee and secretary, together with his costs. After the filing of respondent's answer, and upon an agreed statement of special issues of fact, the case

was sent to the second judicial district court in and for Washoe county, to be tried by a jury. The jury found for plaintiff, and thereupon judgment was entered in this court, according to the prayer of the complaint. Respondent asks for a new trial on the ground of several alleged errors in the court below.

It is claimed that, in the sense of the statute, Gulling was not a stockholder, and, consequently, was not eligible to the office of trustee. The statute provides that, "the corporate powers of the corporation shall be exercised by a board of not less than three trustees, *who shall be stockholders in the company.*" If Gulling was not a stockholder, he was ineligible, and has no right to the office, or the books, papers, and property appertaining thereto, and respondent is entitled to retain the same until his successor, a stockholder in the corporation, is elected in his place.

The first question for our consideration, then, is this: Upon the facts admitted, is Gulling a stockholder in the corporation? We have carefully examined the statutes and decisions of the different states upon this question, and have come to the conclusion that the answer depends entirely upon a proper construction of our statute, for the reason that the incorporation law, under which this corporation was formed, provides that, "said incorporation, and the members thereof, shall be subject to all the conditions and liabilities herein imposed and to none others:" and the statutes of other states, which have been construed by the courts, differ so materially from ours, that the decisions thereon furnish but little light for our guidance.

The point of contention under consideration arises upon an exception taken by the respondent to the action of the court below in striking out all of Gulling's testimony except that which showed that eight shares of the stock of the corporation stood in his name upon the books of the company at the time of the election. We shall concede that the testimony struck out tended to show that Gulling's father owned sixteen shares of the stock; that he handed the certificate to his son, Charles Gulling, and requested the latter to have eight shares put in a new certificate in his name

and transferred to him upon the books of the company for the purpose of making him a stockholder and eligible to the office of trustee, and that he never paid anything for the stock.

Did such an ownership or holding of stock make Charles Gulling a stockholder according to the legislative intent? Counsel for respondent claim that the testimony struck out tended to show that his ownership was only colorable, while under the statute he must be a stockholder holding and owning the stock in his own right, in order to be eligible to the office of trustee; and that respondent had the right to go behind the book title to ascertain if he was a stockholder in the sense above stated. The court below took a different view, and held that Gulling, who undoubtedly had all the muniments of a perfect legal title to the eight shares, and who acted according to his father's wishes, was a stockholder under the statute. We think the court was right. The word "stockholder" is not defined by the statute, nor is it required, in terms, at least, that a person to be eligible to the office of director shall be a *bona fide* stockholder, or that he shall own stock absolutely in his own right. He must, however, be "a stockholder in the company."

Counsel for respondent say: "If the mere fact that the stock stands on the books in the name of one, makes him eligible to the office of trustee, irrespective of the question whether or not he has any interest in it, the object of the statute is so readily evaded that it becomes a dead letter." It is a part of the history of corporations in this state, that under the statute of 1862, in force at the time our general incorporation law was passed (March 10, 1865), a person was considered and treated as a stockholder by corporations, if he appeared as such upon the books of the company. Except as to the liabilities of stockholders for their proportion of the debts of the corporation, the present statute is similar to the former one; and as to the qualifications of directors, no change was made. If the legislature intended that a director should own stock absolutely in his own right, it ought, at least under such circumstances, to

have so declared in unmistakable language. But other legislation of the session of 1865 tends to show that the construction contended for by counsel for respondent was not intended. In the statute providing for the incorporation of railroad companies, etc., approved March 22, 1865, only twelve days after the approval of the general incorporation law (Comp. L. 3425), it is ,enacted, in section 3429, that "no person shall be a director, unless he shall be a stockholder owning stock absolutely in his own right, and qualified to vote for directors at the election at which he may be chosen;" and to vote he must own stock ten days before election. To my mind it is significant, that, in the face of a known custom contrary to respondent's theory, the general incorporation law was re-enacted in respect to the qualification of directors, while in the railroad law, it was specially declared that every director should be a stockholder owning stock absolutely in his own right. The fact that in the railroad law the legislature. *ex industria*, made absolute ownership the test of eligibility, is strong evidence that in the general law, where that test was excluded, the same rigor was not intended.

But why is it unreasonable to suppose that, our legislature intended to recognize as stockholders those persons who should hold certificates of stock in their own names, and in whose names the stock should stand upon the books of the company, although, as between themselves and outside parties, there might be private agreements and peculiar equities, when state after state, noticeably New York and New Jersey, in terms, enacted the same thing? (See 1 Rev. Stats. N. Y. for 1829, p. 603, sec. 6, and for 1836, p. 605, sec. 6; Nixon's Dig. of Laws, N. J. 1809–1861, p. 153, sec. 13. In the latter state it is enacted that, the books "shall be the only evidence who are stockholders of such company entitled * * * to vote in person or by proxy, at any election for directors of said company.

The charter of the Providence and New York steamship company provided that, only stockholders were eligible as directors, and the by-laws provided that, only those stockholders should be entitled to vote at meetings as should,

according to the company's stock ledger, have been holders of stock for ten days next preceding such meeting. In *Hoppin et al.* v. *Buffum et al.*, 9 R. I. 517, it appears that a certain number of shares in the corporation, owned by Edward P. Taft and Cyrus Taft, were pledged to Earl P. Mason, as security for debts due to himself and others, but neither the ownership nor pledge appeared on the books, where the stock had, from the formation of the corporation, stood in the name of " Earl P. Mason, trustee." The certificate was so issued in 1867, and he voted until 1870, without objection.

The court said: "A person who pledges stock has the right to vote upon it, until the title of the pledgee to the stock is perfected. If Taft had appeared on the books as owner, and the books had shown the pledge, Mr. Taft's right to vote could not have been disputed. The object of the stock book and of requiring transfers of stock to be recorded by the corporation, is for the protection of the corporation, to enable it to know who are its members, who are entitled to dividends, and for no purpose is it more important than to enable it to know who are entitled to vote in case of an election. This doctrine is recognized by many authorities directly, and by many impliedly. * * *"

If the real owner wishes to have his name, or the true state of facts, appear on the books, he has his remedy in equity to compel a proper transfer, or to compel the pledgee to give a proxy, as was done in the case of *Vowell* v. *Thompson*, 3 Cranch, C. C. 428. * * * In the present case, the stock stood in the name of " Earl P. Mason, trustee." The books did not disclose the nature of the trust.

If any other person was the equitable owner of the stock, and entitled to have it transferred to him, he should, if his right was disputed, assert it in season, and take the proper measures to enforce it. But if the trust was of such a nature that the trustee has the control and management of the property, and is to exercise his discretion concerning it, then he is the proper person to represent and vote upon it, and the corporation can not be required to examine into the nature of the trust with a view to decide as to the right to vote."

But the intent of the legislature must be gathered from the law itself. Let it be remembered that Charles Gulling held the entire legal title to eight shares; the certificate was in his name and the transfer was entered upon the company's books. If he is not a stockholder, it is because such ownership or holding of stock does not satisfy the statute. It is just as true that stockholders and none others can vote, as it is that directors must be stockholders. If Gulling was a stockholder he could vote and act as director; otherwise he could do neither.

Section 3393, Comp. L., provides that, "each stockholder, either in person or by proxy, shall be entitled to as many votes as he or she may 'own,' or represent by proxy, shares of stock;" and it is argued therefrom that an absolute owner in his own right only is a stockholder or can vote. It will be seen that the words "own" and "hold" are used in the statute in the same sense. For instance: Shares of stock "held or owned" by a married woman "may be transferred by her without the signature of her husband;" and all dividends payable upon shares "held" by a married woman may be paid to her in the same manner as if she were unmarried; and any proxy given by a married woman touching any share of stock "owned" by her shall be valid and binding. (Comp. L. 3397.)

"If, after such notice has been given, any stockholder shall make default in the payment of the assessment upon the shares *held* by him, so many of such shares may be sold as will be necessary for the payment of the assessment upon all the shares *held* by him, her, or them." (Comp. L. 3398.) "It shall be the duty of the trustees of every company incorporated under this act to keep a book containing the names of all persons, alphabetically arranged, who are, or shall become, stockholders of the corporation, and showing the number of shares of stock *held* by them respectively and the time when they became the *owners* of such shares." (Id. 3404.) ·

So, it is evident, that one who "holds" shares of stock is recognized as a stockholder as well as one who "owns" them; and in the portion of section 3393, before quoted, the

word "'hold" may be substituted for "own," when it would read thus: "Each stockholder, either in person or by proxy, shall be entitled to as many votes as he or she may *hold,* or represent by proxy, shares of stock."

It must be admitted that the legislature intended, either that all who, as to third parties, "hold" stock in the sense of the statute—that is, by certificate in their own names, with proper transfer upon the books—should also own it absolutely in their own right, in order to be stockholders, or that all should be considered such who hold it as above stated, notwithstanding there are private agreements and equities between them and others. As before stated, we think the latter view is correct. Section 3397 provides, that the capital stock of a corporation, when it is divided into shares, shall be personal estate, and that "such shares may be transferred by indorsement and delivery of the certificate thereof, * * * but such transfer shall not be valid, except between the parties thereto, until the same shall have been so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares, and the date of the transfer."

Under that statute, the whole title passes to the transferee so far as the transferrer is concerned, without an entry upon the books; but, as to everybody else, the legal title remains where it was before the transfer. (*Bercich* v. *Mayre,* 9 Nev. 316; *State* v. *Pettinelli,* 10 Id. 144; *Weston* v. *The Bear River and Auburn Water and Mining Company,* 5 Cal. 186.) In the absence of other provisions modifying their natural import, those last quoted, in connection with other sections of the statute, and especially 3404 and 3398, show conclusively to my mind that, as to the corporation and other third parties, the legislature intended to have the books show the names of stockholders, and that, as to such third parties, persons holding the legal title and having control of the stock should be considered stockholders, except in cases where the same may have been obtained by fraud or other unfair means.

It will not be denied that delinquent stock can not be

sold for assessments without notice to stockholders holding the same; yet section 3398 provides that, notice may be given *personally* or by publication, and if, after notice, any stockholder shall make default in the payment of the assessment upon all the shares held by him, so many of such shares may be sold as will be necessary to pay the whole assessment due. Personal notice is as effective as notice by publication. The secretary has no means of knowing who are stockholders, except by an examination of the books, and he has a right to rely upon them as giving him correct information. If he gives personal notice to a party appearing to own shares upon the books, or if he publishes the delinquent stock in the name of such party, and the assessment is not paid, the necessary number of shares may be sold, although they may have been transferred by indorsement and delivery only, before the assessment was levied or the notice given. How, then, can it be said that the legislature did not intend to regard as stockholders persons appearing upon the books and holding stock as such? In this case the whole stock is held, probably, by persons residing in Washoe county, and in case of assessment they may all be served personally with notice. Charles Gulling holds the legal title to eight shares, and appears, upon the books, to be the absolute owner. Either he or his father had the right to cast eight votes upon them, because one or the other was, as to them, a stockholder.

Those shares may be assessed, regardless of the stockholder, and notice may be given, as before stated, to Charles Gulling; but if counsel for respondent are right in claiming that the father is the stockholder, then, before sale, notice should be served upon him, because "notice shall be given to the stockholders, personally or by publication." If it be said in answer that the father would be estopped to deny his own voluntary transfer, still, in that view, the intention of the legislature is not less apparent.

The case cited by counsel for respondent (*State* v. *Hunton*, 28 Vt. 595) is not opposed to our interpretation. The general banking law of that state enacted that no stockholder *residing out of the state* should, either personally or by proxy,

vote in the meetings of the corporation; and that a stockholder of four shares should have four votes; six votes for eight shares; seven votes for ten shares, and one vote for every five shares above ten; *provided*, that no stockholder should be entitled to more than twenty votes. (Comp. Stats. of Vermont for 1850, p. 489, sec. 54.)

Prentiss, a citizen of New Hampshire, advanced to Danforth and others, citizens of Vermont, a large sum of money, which was expended in the purchase of a major part of the stock of the White river bank; and conveyances of the stock were made to citizens of Vermont, and by them parceled out to other citizens, giving generally, to each, four shares. More than five hundred shares were thus distributed. The court decided, upon ample proof, that Prentiss was the real owner, and that the pretense that it belonged to any one else was altogether colorable; that if the stock had stood in his name he could not have voted upon it; that to allow him to do so, would be a fraud upon the law, which should not be outwitted by cunning devices. In other words, it was decided that Prentiss could not do by indirect means, what the law declared should not be done directly. The court said the statute showed a marked intention on the part of the legislature that the banks should be controlled only by citizens of the state. And we say, if our statute had declared that none should be directors but stockholders holding or owning stock absolutely in their own right, or had used language indicating such intention, upon a fair consideration of the entire statute, we should have no difficulty in arriving at the conclusion of the Vermont court. *Stewart* v. *Mahoney M. Co.*, 54 Cal. 149, and the decision of Judge Sullivan upon the application of Dewey to set aside the election of directors of the California Mining Company, in one of the superior courts of San Francisco, are also cited. We think neither case is authority for respondent under our statute.

When the first was decided, section 298 of the civil code provided as follows:

"The *owners* of shares in a corporation which has a capital stock are called stockholders. If a corporation has no

capital stock the corporators and their successors are called members." And section 312 provided that, "Every person acting therein (elections), in person or by proxy, or by representative, must be a member thereof, or a *bona fide* stockholder having stock in his own name on the books of the corporation at least ten days prior to the election. Any vote or election had other than in accordance with the provisions of this article is voidable at the instance of absent stockholders or members, and may be set aside. * * *"

That is to say, under the statute, no person could vote who was not a *bona fide owner* of shares of stock, or a member; and an. election carried by the votes of other persons could be set aside. One thousand shares of the stock voted, stood in the name of "H. P. Bush, trustee." They were owned by three other parties, neither of whom authorized Bush to represent them, or, in fact, knew of the meeting. The stock had been issued in the name of Bush, trustee, without the knowledge or authority of the owners. After citing section 312 of the civil code, the court said: "Bush was not the proxy or representative of either of the owners of the stock, nor was he a member of the corporation, nor was he a *bona fide* stockholder; therefore he had no legal right to vote the stock." The court evidently took the view that there was a statutory prohibition against the voting of any but *bona fide owners* of stock, and that therefore, Bush's votes were illegal—a conclusion with which we cordially agree, under the statute, and, especially, under the circumstances shown.

At the time of Judge Sullivan's decision the statute was as follows: "At such election the stock of said corporation shall be voted by the *bona fide* owners thereof, as shown by the books of said corporation, unless the certificate of stock, duly indorsed, be produced at such election, in which case said certificates shall be deemed the highest evidence of ownership, and the holder thereof shall be entitled to vote the same." (Cal. Stat. 1880, 132, sec. 3.) It was claimed that the books of the company were the highest and only evidence of ownership. Judge Sullivan held that proof of ownership could be made outside of the

books under the last statute as well as the first. The case being appealable, it would be in bad taste for us to comment upon the decision, and we refrain from so doing.

° The conclusion arrived at in relation to the *status* of Gulling, renders it unnecessary to consider at length the alleged erroneous rulings of the court concerning the validity of the votes cast by Haydon, proxy for Lee, executor of the estate of Larcombe. As to the corporation and other third parties, Lee held the legal title to ten shares, and the stock issued in his name was held by him, although it belonged in fact to the estate of which he was executor. He was a stockholder, and being such, had the right to vote in person or by proxy. The errors complained of touching the validity of Smith's votes need not, therefore, be considered. As to the alleged error in ruling that the burden of proof was upon respondent, it is sufficient to say that, if it was erroneous, it was, under the admissions, without injury.

We have considered this case upon the facts presented, and intimate no opinion as to what the result would have been if Gulling, the father, had demanded the right to vote the eight shares held by, and in the name of, his son.

New trial denied.

BELKNAP, J., dissenting:

In order to have been eligible to the directorship, Gulling must have been a stockholder, and this fact should have been determined by the same rules of evidence as in general govern courts in the determination of controverted questions of fact. The rule of evidence upon this subject has been changed in some states by express provision of statute or authorized by-law making the entries in the transfer books conclusive evidence of the right of a person to vote the shares standing therein in his name (as was the case in *Hoppin* v. *Buffum*, referred to in the opinion of the court), but when this express authorization does not exist no case has gone farther than to hold the entries in the transfer books *prima facie* evidence of ownership.

Nor do I think the statute of this state was intended to

change the general rule of evidence upon the subject. Section 5 of the corporation act contains a provision that the trustees of the corporation shall be "stockholders in the company." The same section provides that "each stockholder * * * shall be entitled to as many votes as he or she may own * * * shares of stock," etc., and section 12 provides that the pledger of stock may nevertheless represent and vote his stock at all corporate meetings. These provisions indicate an intention on the part of the legislature to intrust the owners of the stock of the corporation with the control of its elections and its general management, in accordance with a principle which has the sanction of long continued usage, and which is so firmly engrafted into the law of corporations that it may be said to be a part of their common law.

In the absence of an intention on the part of the legislature to alter or define the meaning of the word "stockholder," as used in the statute, it should be assumed to have been used in its universally accepted sense, and to mean the owner of the shares. If, therefore, Gulling did not own the shares, he was ineligible to the directorship.

The question whether one in whose name stock stood upon the books of the corporation was from that fact to be treated as a stockholder for the purpose of voting at corporate elections, arose in Vermont, under a statute which, among other matters, provided that "each stockholder shall be entitled to a number of votes proportional to the number of shares which may have been held by such stockholder at least three months before the time of voting," etc., and which further provided that no stockholder residing out of the state should be entitled to vote at corporate meetings. The facts were that a citizen of another state, in order to obtain the control of the directory of a banking corporation of the state of Vermont, caused certificates of stock of which himself was the true owner, to be placed in the names of citizens of the latter state, friendly to his plan, and who voted the stock so transferred to them in accordance with his wishes. The court held that the votes so cast should have been rejected, because the citizens of the state of Vermont were not in fact

the owners of the stock, the transfer to them having been made simply for the purpose of enabling them to vote upon it. (*State* v. *Hunton*, 28 Vt. 594.)

The analogy between this case and the one under consideration appears to be very close. In both cases it was claimed that the transfer was simply colorable and for the purpose of conferring an apparent eligibility to the positions of stockholder and director. If importance is to be attached to the word "held" as against the word "owned", the Vermont statute authorized the stockholder to vote the shares *held* by him, whilst the statute of this state entitles him to vote the shares *owned* by him.

In Ohio, when the charter of a banking corporation provided that stockholders only should be elected directors, it was held that the transfer of shares to persons for the purpose of making them eligible to the directorship, who had no interest in the stock, neither made them eligible for directors nor qualified stockholders. (*Bartholomew* v. *Bentley*, 1 Ohio St. 37). The same principle was decided in the case of *Vowell* v. *Thompson*, 3 Cranch's C. C. 428, where it was held that the mortgagor of stock in an insurance company, who had transferred his stock to another as collateral security for a debt, was entitled to vote upon the stock at an election of directors, he being considered the owner thereof, and the court compelled the mortgagee to give the mortgagor a proxy for this purpose. To the same effect is *Merchants' Bank* v. *Cook*, 4 Pick. 405.

In New York, under a statute providing "in all cases where the right of voting upon any share or shares of the stock of any incorporated company of this state, shall be questioned, it shall be the duty of the inspectors of the election to require the transfer books of said company, as evidence of stock held in said company, and all such shares as may appear standing thereon in the name of any person or persons, shall be voted on by such person or persons, directly by themselves, or by proxy," courts have allowed parties to go behind the entries in the transfer books for the purpose of determining the ownership of shares for the purpose of voting. This was the ruling in *Ex parte*

*Holmes,* 5 Cow. 428, and also in the *Matter of the Long Island Railroad Company,* 19 Wend. 37. In the latter case one Lord was the owner of a large number of shares of stock of the company by assignment from individuals, in whose name the shares stood upon the transfer books. He applied to the company to have the stock transferred to himself, but was refused for the reason that the stock, under a by-law of the company, had been declared forfeited for non-payment of calls. At the election he offered to vote the shares and was refused. If his vote had been received it would have changed the result of the election. The court, being of opinion that the by-law was invalid and that Lord's vote was improperly rejected, ordered a new election.

And in a late case the supreme court of New York held that the provision of the statute of that state above set forth was intended to be conclusive only upon the inspectors of election, and that courts had the power, and it was their duty, to go back of the entries in the transfer book and inquire into the rights of holders of disputed shares to vote upon them. In that case the shares stood upon the transfer books in the name of one to whom they had been pledged. The judge who held the special term considered that this fact precluded all inquiry as to whether the transfer was an absolute sale or a mere pledge, but the general term reversed the judgment, saying: "We are of opinion that the special term erred in holding that it had not power to determine the question whether the transfer of the shares was a sale or a pledge, and whether the appellant had the right to vote upon them, notwithstanding they stood upon the transfer book in the name of the respondent." (*Strong* v. *Smith,* 15 Hun, 222.) The judgment of the general term was subsequently affirmed by the court of appeals. (80 N. Y. 637.)

The corporation act of this state was adopted from the state of California, and before its adoption had received a judicial construction from the supreme court of that state. When a statute has received a judicial construction, and is afterwards adopted by another state, the construction as well as the terms of the statute will be deemed adopted. In

such cases it is presumed that the legislature intended to adopt the received construction; different language would have been employed had the intention been to exclude it.

In *Allen* v. *Hill*, 16 Cal. 114, certificates of stock owned by the firm of Hill & Devane, stood in the name of Devane. After Devane's death, the question arose whether the surviving partner or the administrator had the right to vote the shares. The estate being unsettled, the surviving partner had the right to continue in possession of effects of the partnership under the statute of that state regulating the settlement of the estates of deceased persons, but the question was whether his right to vote the stock was affected by the fact that it stood in the name of Devane alone. Upon this point the court said: "We think that no consequence is to be attached to the circumstance that a portion of the stock represented by Hill stood upon the books of the corporation in the name of Devane alone. This was *prima facie* evidence that it belonged to the separate estate of Devane, but it was competent for the defendants to show that it was in fact the property of the partnership. The cases cited from New York proceed entirely upon a statute of that state, and the reasoning in some of these cases indicates very clearly that in the absence of the statute the conclusion would have been different. * * * It would seem, upon principle, that the real owner of stock should be entitled to represent it at the meetings of the corporation, and that the mere fact that he does not appear as owner upon the books of the company should not exclude him from the privilege of doing so."

In the subsequent case of *Brewster* v. *Hartley*, 37 Cal. 15, the court allowed the plaintiffs to go behind the entries in the certificate book for the purpose of ascertaining the ownership to certain shares, and upon determining that the corporation itself was the real owner of the shares which had been voted by a trustee in whose name they stood, ordered the election set aside.

Section 3397, touching transfers of stock and providing that no transfer shall be valid, except between the parties thereto, until the same shall have been entered upon the

books of the corporation, does not affect the question presented by this case. A similar provision is contained in the corporation statutes of other states, and is intended for the protection of the corporation in the enforcement of its lien for assessments or other debts. Under it no transfer, unless entered upon the company's books, can affect its rights.

The legislature did not intend by this clause that all transfers, except as between transferrer and transferee, should be invalid unless entered upon the books of the company, but that such transfers should be valid as against the whole world except the corporation or subsequent purchaser in good faith without notice. (*Parrott* v. *Byers*, 40 Cal. 614; *Com. Bank of Buffalo* v. *Kortright*, 22 Wend. 362; *Bank of Utica* v. *Smalley*, 2 Cow. 778; *Gilbert* v. *Manchester Iron Co.*, 11 Wend. 628.)

The requirement of sec. 3404, that the trustees shall keep a transfer book containing the names of the stockholders, which shall be accessible to stockholders and creditors, was contained in the original corporation act of 1862, of which the present law is amendatory. Under that law a personal liability was imposed upon stockholders, and this section appears to have been intended for the protection and information of the creditors of the corporation as well as the stockholders, who were liable to become creditors in case of corporate insolvency. This section now contains the only express requirement relative to the keeping of the transfer book, and whatever other purpose it may perform it bears no relation to the question of the evidence that shall be received to establish the fact whether one is or is not a stockholder.

I am of opinion that the parol evidence touching Gulling's ownership of the shares should not have been withdrawn from the consideration of the jury, and, therefore, dissent from the judgment of the court.