## The People of the State of Illinois ex rel. F. W. Matthiessen et al., Appellants, v. C. B. Lihme, Appellee.

### Gen. No. 6,064.

1. QUO WARRANTO, § 31*—*when state's attorney party to.* The state's attorney *held* a party to petition for leave to file an information in the nature of quo warranto to inquire into the right of a person to hold the office of director of a corporation.

2. ESTOPPEL, § 51*—*when stockholder estopped from questioning election of director.* Officers and stockholders of a corporation *held* not estopped, by acquiescing for several years in the election of a person as a director, from questioning his right to hold the office because he was not a stockholder, where they did not know of his disqualification until shortly before beginning a quo warranto proceeding to determine his right to hold such office.

3. CORPORATIONS, § 250*—*when trustee may transfer stock to qualify person as director.* A testamentary trustee may transfer a share of stock to a third person in order to qualify him as a director, where the former was empowered by will to do so, although done under an agreement that the latter should have no beneficial interest in the stock, and after it was recorded in his name on the books of the company he indorsed it in blank and returned it to the trustee.

4. CORPORATIONS, § 426*—*when contract to employ as director is valid.* A contract between a trustee who represented one-half of the stock of a corporation with a person to whom he transferred one share of stock in order to qualify him as a director, that he should hold the office for a term of years at an agreed compensation, *held* not against public policy, where all of the stock was controlled by two families.

5. CORPORATIONS, § 250*—*when person holding only legal title to stock may be director.* A person to whom a share of stock is transferred solely to qualify him for the office, and who has no beneficial interest in the stock, may be elected a director of a corporation under a statute merely providing that stockholders may be directors.

Appeal from the Circuit Court of La Salle county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed April 15, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

GEORGE WILEY and M. F. GALLAGHER, for appellants.

MONTGOMERY, HART, SMITH & STEERE, for appellee; CHARLES S. CUTTING, N. H. PRITCHARD and J. D. DICKERSON, of counsel.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

The appeal is from a judgment for the respondent on a trial by the court without a jury on an information in the nature, of a quo warranto calling upon C. B. Lihme, the appellee, to show his qualification to serve as a director of the Matthiessen & Hegeler Zinc Company. The Illinois Statute of 1857, under which the corporation was organized, provides in section 4 that the affairs of the company shall be managed by a board of not less than three nor more than seven directors, to be elected annually by the stockholders, who shall be stockholders therein. The charter of the corporation provides for four directors, and the by-laws fix December 18th as the date of the annual election. The qualification of appellee is attacked on the ground that he was not at the time of his election, December 18, 1912, a stockholder of the corporation. It is the same corporation and many facts are involved that were under consideration in our opinion filed herewith in *People ex rel. Carus v. Matthiessen,* Gen. No. 6061, *ante,* p. 328.

The petition for leave to file the information was filed December 17, 1913, by F. W. Matthiessen, George P. Blow and F. W. Matthiessen, Jr., stockholders of the corporation, by their attorney, M. F. Gallagher; but leave was obtained on the motion of the State's Attorney, George S. Wiley, and the information filed by him. Appellee pleaded that he was a stockholder of the corporation, elected to the office by the unanimous vote of the stockholders, with other appropriate averments, as his warrant to hold the office. The par-

ties stipulated that either party might introduce on the trial such evidence as might be introduced on the merits of the case, if both parties had well pleaded the conditions as they understood them, without reference to any technical questions of pleading.

There was a stipulation of facts reciting: That the corporation was organized in 1871 under the Illinois Act of 1857, with capital stock of $426,000 divided into 426 shares, charter fifty years; that the stock has at all times been equally divided between E. C. Hegeler and members of his family on the one part, and F. W. Matthiessen and members of his family on the other part; that on December 17, 1913, the date the information was filed, the company's books showed the following stockholders: Mary Hegeler Carus, daughter of E. C. Hegeler, 1 share; Mary Hegeler Carus, trustee, 211 shares; C. B. Lihme, son-in-law of E. C. Hegeler, 1 share; F. W. Matthiessen, 178 shares; George P. Blow, son-in-law of F. W. Matthiessen, 3 shares; Eda Matthiessen, daughter of F. W. Matthiessen, 10 shares; Dr. Philip S. Chancellor, son-in-law of F. W. Matthiessen, 2 shares; Adele M. Blow, daughter of F. W. Matthiessen, 10 shares; F. W. Matthiessen, Jr., son of F. W. Matthiessen, 10 shares; that E. C. Hegeler died June, 1910, and by will left all his stock in the company, consisting of 211 shares, to Mary Hegeler Carus, his daughter, as trustee for his seven children (naming them); that under the will said capital stock of the testator was given to his daughter, Mary Hegeler Carus, as trustee, and to her successors in trust, with provisions that she should cause said shares to be transferred to her and stand in her name as trustee upon the books of the company, and should have the power and authority "to transfer one or two shares, as may be necessary, to herself, as an individual, or to one or two other persons to enable such other person or persons to act as directors or director in said company;'" that said trustee should

hold and control said shares until the expiration of the charter, and then convert them into cash and distribute it in equal parts among said children; that she should collect all dividends and pay herself as compensation ten per cent. of the amount of such dividends, such additional sums as she may find necessary to some suitable person selected by her to act as a director, and such additional sum as she may find necessary to pay for legal advice, and the remainder of such dividends to be distributed among said children; and the declaration: "That my intention and aim in placing all of said shares of stock in the hands of a trustee as above, is that all of said shares shall be voted and controlled as a unit for the protection of the interest in said company represented by said shares." The stipulation further recites: That the share now held by Mrs. Carus individually was transferred by her from the 212 shares given to her in trust; the share in Mr. Lihme's name was transferred to him by Mary Hegeler Carus on December 17, 1910, and was a share which she individually held during the lifetime of her father, and at the time of his death; that Mrs. Carus was paid for this share as follows: There was some controversy as to the terms of the Hegeler will, and Mrs. Carus, the executrix, relinquished to the other children certain rights given to her by the will, and it was agreed on October 12, 1910, that she should transfer to herself, as trustee, the one share of stock standing in her name individually. Instead of transferring this share to herself, as trustee, she assigned it to C. B. Lihme, to whom a new certificate was issued December 17, 1910. It further appears, that four days thereafter, Lihme signed an instrument reciting that the share of stock was transferred to him for the purpose of qualifying him as director of the company, and is not held by him under any claim of ownership and is not to be construed as any part of his private estate, but that he

holds the same merely for the purpose of qualifying him as a director in the company, and that said share of stock is a part of and belongs to the 213 shares of stock held in trust under the agreement dated October 12, 1910. It is further stipulated that the stock certificate was issued to Lihme and by him indorsed in blank, and deposited by Mrs. Carus in a safety deposit box rented by all of the heirs of E. C. Hegeler and standing in the joint name of Mary Hegeler Carus and Julius W. Hegeler. Access could be had to this box only by the joint action of Mrs. Carus and Julius W. Hegeler. In this box were kept the stock certificates covering the stock held by Mrs. Carus as trustee, the instrument signed by Lihme, and other documents belonging to all of the heirs of E. C. Hegeler.

It is further recited that E. C. Hegeler was president of the company from its organization until December, 1903. Mary Hegeler Carus has been president since December, 1903, to December 18, 1913. A member of the Matthiessen family has been secretary since the corporation's organization. Since December 18, 1903, until December 18, 1913, George P. Blow has been secretary. The board of directors during the entire life of the corporation until December 18, 1913, has been elected equally from the two interests. The stipulation sets out the three sections of the by-laws quoted in *People ex rel. Carus v. Matthiessen,* Gen. No. 6061, *ante,* p. 328. There was a by-law under which the management of the affairs of the company is vested in the president and secretary, and the stipulation further shows that at the December meeting of the stockholders in 1910, C. B. Lihme was elected as director, and again at the annual meeting of 1911, and again at the meeting of 1912, each time by the unanimous vote of all the stockholders of the corporation, with no objection made to the qualification of Lihme as a stockholder or his right to serve as a director.

The stipulation covers the facts most material to

the consideration of the question here presented. There was some evidence introduced in which it appeared, in addition to the stipulated facts that Mary Hegeler Carus as trustee had contracted in writing with appellee for his services as director of the corporation for the term of seven years beginning December 18, 1912, and that he should have as compensation therefor fifteen per cent. of the net profit accruing to the Hegeler stock, that he had received dividends and sent them to Herman Hegeler, who was acting as treasurer of the seven Hegeler children; that appellee had been in the Zinc business for nineteen years, 'and for fifteen years had resigned and constructed furnaces for handling zinc ore; that he was a practical zinc man, a chemist, and not an office man.

The question is whether appellee under those facts is a stockholder in the company. He was not at the time in question the beneficial owner of the one share of stock that stood in his name. Whether he was a trustee and as such trustee a stockholder within the meaning of the statute must be determined from the provisions of the will of Edward C. Hegeler, above recited, and the subsequent transactions intended to constitute him a stockholder and qualify him to hold the office of director. The testator provided that all his stock in the company should be kept together and voted as a unit and the proceeds distributed by his trustee at the expiration of the charter of the company in 1921, fifty years from its date. The testator owned half the stock of the company except one share owned by Mrs. Carus. His interest should be represented by two directors in the company. After his death, his daughter Mrs. Carus would be the only person, outside of the Matthiessen family, eligible as a stockholder to the office of director. The testator attempted by his will to provide some way for the qualification of another person to act as director representing his interest, and Mrs. Carus, his trustee, attempted

to carry out that provision by transferring her one share of stock to Mr. Lihme and permitting him to hold the legal title to it with the privileges of a stockholder to vote the stock and hold office in the corporation and the liabilities that attach to that position, and she sought to stimulate him to that effort which a personal interest engenders by making the amount of his compensation dependent upon the success of the business.

Appellee contends that the trial court should have dismissed the case because neither the State's Attorney nor the Attorney General was a party to the petition for leave to file the information. The record shows, as before noted, that the petition was filed by the relators, but that leave to file the information was obtained on the motion of the State's Attorney. This seems a sufficient answer to the contention that he was not a party to that part of the proceeding in which leave to file the information was obtained.

Appellee urges that the relators are estopped to question his right to the office because they acquiesced in his election, and suggests that he was elected director in 1910, and reelected in 1911 and 1912, by the unanimous vote of the stockholders, and that the relators in this proceeding were present at the meeting of 1912, and voted their shares of stock in favor of his election, and that from the date of his election until the filing of the information herein, his standing as director had not been questioned and no one objected to his qualification. Appellants answer that it does not appear that the relators knew before they filed the petition the facts as to appellee's ownership of the share of stock that stood in his name, and even had they known the facts, no defense can be founded on estoppel, because appellee must justify, if at all, by showing a good title, and an equitable title is not sufficient, and call our attention to the language of the court in *People v. Crowley*, 250 Ill. 282 (a case relied

on by appellee), where the court says on page 288, "that each case must be largely decided on its own special and particular facts," and argues that the facts of this case forbid the application of the doctrine of estoppel. The court also said on the same page:

"While the public authorities will not be barred either by laches or the acquiescence of individuals, * * * still this court has frequently held that unreasonable delay or acquiescence on the part of the persons complaining, * * * will justify the refusal of the court to proceed to judgment, although no statute of limitations has intervened. (*People v. Lease,* 248 Ill. 187; *People v. Schnepp,* 179 id. 305; *People v. Hanker,* 197 id. 409; *People v. Anderson,* 239 id. 266; *People v. Hepler,* 240 id. 196.) The rule in quo warranto proceedings is the same as it is in certiorari. The remedy in either case is not a matter of absolute right."

The case was before the Supreme Court again and reported in 260 Ill. 341. The court said on page 342:

"It is manifest that the interest of the public in this proceeding is only theoretical and that the substantial interest is entirely the private interest of the relators. * * * The remedy by an information in the nature of a quo warranto is not a matter of absolute right but is a subject for the exercise of sound judicial discretion. The court should take into consideration all the circumstances of the case, and if the proceeding is in the private interest of the relators, only, an unreasonable delay or acquiescence on their part, as well as considerations of public interest and convenience and the consequences of a judgment of ouster, will justify a refusal to proceed to judgment. *People v. Schnepp,* 179 Ill. 305; *People v. Drainage District,* 193 id. 428; *People v. Anderson,* 239 id. 266; *People v. Lease,* 248 id. 187."

A consideration of all the circumstances of this case furnishes many reasons in support of appellee's claim of estoppel. There are equitable reasons, as between the real parties to this suit, why appellee should be

permitted to hold the office. The corporation was a family affair, practically a partnership between E. C. Hegeler and the relator, F. W. Matthiessen, until the death of Mr. Hegeler, and was intended by them to so continue between their families, with an exactly equal power of the part of each family to direct and control its affairs. There is no substantial difference, so far as the interest of the corporation is concerned, and the interest of the two families in its assets and profits, whether the son-in-law of either party acting as director owns a share of stock or not. His interest in the business comes from his relation to the family for which he is acting and of which he is a part, and not, in the case of such small holdings of stock as were permitted in the families of the two partners, from motives of personal pecuniary gain from dividends on that stock; and another circumstance of this case is that under appellee's contract he was given a greater personal interest in the earnings of the corporation than that of a small stockholder. And there was a delay in filing the information until the last day of appellee's term of office, making it obvious that the purpose of the attack was not to oust him from the office to which he was elected during the term for which he was elected. We doubt, however, the power of a court to carry equitable principles in cases of this kind to the extent required to estop the relators from questioning the title of appellee to the office, especially in view of the fact that it does not appear that they had knowledge before they filed the petition that he was not the beneficial owner of the stock; and we think the case must be decided on the question principally argued by counsel, whether under the will of E. C. Hegeler and the transactions subsequent thereto, appellee was a stockholder within the meaning of the statute requiring that qualification of a director.

It is argued by appellant that by the very terms of the will of E. C. Hegeler there could be but one stock-

holder representing his holdings in the company, and therefore but one person qualified to serve as director representing his interest. We do not so construe the will. We are of the opinion that Mrs. Carus as trustee had power to transfer a share of stock to another person to enable him to act as director, and to make such a transfer as would effectuate the purpose, notwithstanding the expressed intention of the testator that all his shares should be voted and controlled as a unit and converted into cash and distributed on the expiration of the charter of the company. It can hardly be doubted that the testator might by his will have created two separate trusts, each of a part of his stock in the company, and that each trustee would have been a stockholder and eligible to the office of director. If the testator in creating such trusts had stated that his only purpose was to enable two persons to act as directors in this corporation, thereby maintaining the equal balance of the two families on the board of directors, we do not see that that expressed intention would have defeated his purpose. Neither do we see that an expressed intention of the testator that his stock should be voted as a unit during the life of the corporation and then the property that it represented be distributed among his children should in any way hinder the execution of his design to secure a representation of his interest in the corporation equal to that of the Matthiessen interest. Whether his trustees would have been bound to join in voting the stock or it would have been the duty of each to exercise his own judgment, if it differed from that of the other trustee, is not the question; the testator might hope they would act in harmony and express the wish that they would do so, whether they were legally bound to so act or not. We see no reason why he might not have provided that at the termination of the trust one trustee should convey to the other for the purpose of distribution, or that either trustee ceas-

ing to be a director should convey the legal title to stock held by him to another person for the purpose of qualifying that other person to act in that capacity.

It is well settled that a trustee holding stock is eligible to act as director under statutes requiring a director to be a stockholder. Thompson on Corporations, sec. 919; 10 Cyc. 737; Cook on Corporations, sec. 623; 26 Am. & Eng. Encyc. of Law, 894. Our Corporation Act, sec. 24 (J. & A. ¶ 2441), provides that a trustee "shall represent the stock in his hands at all meetings of any stock corporation, and may vote accordingly as a stockholder." Mrs. Carus as trustee had power to appoint another trustee. That power may be conferred on trustees to appoint another trustee is settled law in this State. *Yates v. Yates*, 255 Ill. 66, and cases there cited. Nor is it any objection that a stockholder became such, acquired his stock, for the sole and only purpose of qualifying him as a director in the corporation. Thompson on Corporations, sec. 919; 21 Am. & Eng. Encyc. of Law, 837; Cook on Corporations, sec. 623; *Richards v. Merrimack & C. R. R. Co.*, 44 N. H. 127; *In re Leslie*, 58 N. J. L. 609; *In re Argus Printing Co.*, 1 N. D. 434; *Schmidt v. Mitchell*, 101 Ky. 570; *State v. Leete*, 16 Nev. 245.

But appellants say even if Mrs. Carus as trustee had the power to convey stock to appellee for the purpose of qualifying him to act as director, still she did not do so; that the transaction simply amounted to getting appellee's name on the books of the company as a stockholder, without his holding any title, legal or equitable, to the share of stock in question. This is not the correct view of the situation. The share of stock belonging to Mrs. Carus individually, to which she held the legal title and of which she was the beneficial owner, was in the family settlement agreed to become a part of the trust stock in her hands. She transferred the legal title to appellee, and the transfer was made on the books of the company and he stood

as a stockholder, without notice of record of his rep-resentative character, thus assuming to those dealing with the corporation the liability of a stockholder. *Sherwood v. Illinois Trust & Savings Bank,* 195 Ill. 112. True, the beneficial ownership of this share of stock was in the seven children of the testator. Mrs. Carus had no beneficial interest, as we are using the term, in the stock held by her, except as one of the seven children. It was natural that the trust papers should be kept together, especially as it was a family matter, and not unnatural that this share of stock should be so indorsed that it could be readily handled as a part of the large body of shares belonging to the seven children. We do not see much significance, under the circumstances, in the fact that it was indorsed in blank by appellee and handed by him to Mrs. Carus and placed in the vault with the other shares and papers belonging to the family. In case of a transfer of stock from a father to his son or daughter, if the transfer was properly made and the certificate delivered, it would not be unnatural and would not invalidate the transaction if the donee indorsed the stock in blank and handed it back to the donor for safe-keeping. The possession of the paper might be important if there was doubt about the delivery to the donee or about the fact of ownership; but if the facts as to deliv-ery and ownership clearly appear, as they do in this case, and the only question is one of law arising from those facts, the mere possession of the papers is of little consequence. The case stands as though the testator had provided in his will that appellee should hold the legal title to one share of stock, and Mrs. Carus the legal title to the remaining shares, and each should receive as compensation for duties performed arising from such ownership a percentage of the net earnings of the corporation, and that the certificate should be kept in a safety deposit box used as a recep-tacle for the papers concerning the trust property. If

the testator had so provided, it would seem clear that appellee would have been a trustee as well as Mrs. Carus, and it would not have mattered if he had provided that a part or all of the certificates should be indorsed in blank and it had been done accordingly.

It is objected that the contract made by appellee and Mrs. Carus in relation to his serving as director is void and against public policy. Theoretically, neither she nor he could know that he would be re-elected seven successive times, but practically they knew he could be, and Mrs. Carus representing the Hegeler interest and knowing the value of his services to the corporation was guilty of no moral wrong in contemplating a seven-years' term of service and agreeing on the compensation therefor, and we know of no legal wrong perpetrated by that contract that has any influence on the question whether appellee was a stockholder.

The statute simply requires that a director shall be a stock *holder*. Other statutes in other states in providing for the stock qualification of a director,—some of them require him to be a bona fide stockholder, others a stockholder in his *own right*. The statute here in question does not require a director to be a stock *owner*. The Supreme Court of California, In *Smith v. San Francisco & N. P. Ry. Co.*, 115 Cal. 584, recognized the difference in these terms and said a person might be a bona fide stockholder without being the *owner* of the stock. The Supreme Court of North Dakota, in the case of *In re Argus Printing Co., supra,* said:

"The directors of the corporation are generally required to be shareholders by express provisions of the company's charter or articles of association. A person is a shareholder, within the meaning of a provision of this description, if he holds shares on the books of the company, but not if he is merely the holder of a certificate. It has been held that the transferee on the books is eligible, although he is not the real owner of

the shares, and the transfer was executed for the sole purpose of making him a director."

It is said in Cook on Corporations (6th Ed.), vol. 2, sec. 623:

"If the charter or statutes require a director to be a stockholder, one who holds stock transferred to him in trust for the express purpose of qualifying him for the position, may serve. And where a person has the right to vote on stock as a stockholder, he is eligible to any corporate office to which any stockholder is eligible, and accordingly may be elected a director."

The question has been lately reviewed by the Supreme Court of Wisconsin, in the case of *Casper v. Kalt-Zimmers Mfg. Co.*, decided in December, 1914, and reported in 159 Wis. 517. The court said on page 528:

"It is settled by the great weight of authority in this country and in England that one who holds the mere legal title to stock is qualified to act as an officer of the corporation, though there is a charter provision or statute requiring officers to be stockholders. 3 Clark & Marsh. Priv. Corp., 2031, 2032 and cases cited; 2 Cook, Corp. (6th ed.) § 623 and cases cited; *In re St. Lawrence St. Co.*, 44 N. J. Law, 529; *State ex rel. Rankin v. Leete*, 16 Nev. 242; *In re Argus P. Co.*, 1 N. Dak. 434; 48 N. W. 347 [12 L. R. A. 781n, 26 Am. St. Rep. 639]; *Pulbrook v. Richmond C. M. Co.*, L. R. A. 9 Ch. Div. 610 One who holds stock in trust for the express purpose of qualifying him as an officer is eligible. Cook, Corp. (6th ed.), § 623; *In re Leslie*, 58 N. J. Law, 609, 33 Atl. 954.

"A rule requiring that the equitable or beneficial interest in the stock should be in a person in order to render him eligible as an officer would exclude all trustees from acting as corporate officers and in a large measure debar them from investing trust funds in corporate enterprises because they could not adequately protect such funds by participating in the active management of the business. The reason given for a contrary view is that officers of a corporation should be personally interested in its welfare, and

that can be the case only when the legal and beneficial interest unite in the same person. We do not so consider it. Trust duties are some of the most sacred duties there are, and the confidence reposed through them is seldom abused. Even where stock is transferred for the express purpose of qualifying one to hold a corporate office, the person so transferring it is personally interested in the sound management of the corporation and would be unlikely to jeopardize his interest by placing the stock in incompetent hands. The rule that merely a legal title qualifies is more in consonance with present business requirements and is fraught with no undue hazard to stockholders.''

The Supreme Court of New Jersey said in the *St. Lawrence Steamboat* case, above cited, which was an action to set aside the election of a director who at the time of his election stood as a stockholder by holding a certificate made out in his name that belonged to his wife, and it was charged that he was not a bona fide holder of stock as required by the statute:

''Independent of the statute, a person might be a director of a corporation without being a stockholder. The statute is guardedly expressed. It prescribes as the qualification of a director, that he shall be a bona fide holder of stock. A stockholder may have purchased stock with the view of becoming a director, or have obtained it by gift, or he may hold it upon a trust, and be qualified to be a director. If the stock was legally issued, and is not the property of the corporation, and the legal title is in him, he is prima facie, capable of being a director, and his right to be a director, in virtue of his legal title to such stock, can be impeached only by showing that title was put in him colorably, with a view to qualifying him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization or control of the company, or to carry into effect some fraudulent arrangement with the company.''

The same court in the later case of *In re Leslie*, above cited, used substantially the same language re-

ferring to and reaffirming what was said in the *St. Lawrence Steamboat* case, *supra*.

No controlling decision of the courts of this State is cited, and we know of none. In *Durkee v. People,* 155 Ill. 354, the court, in deciding that the control of a corporation cannot by contract be vested in bondholders instead of stockholders, suggested that bondholders have not the same personal interest in the success of the corporation and keeping up the property by careful management as stockholders have, and that a contract taking the management of a corporation away from its stockholders is against the statute and against public policy and void. That case in no way involves the question whether a trustee holding stock is qualified to act as director, and we do not think any expression found in the opinion should be held to indicate a contrary view to that expressed in the authorities above cited.

We are of the opinion that appellee was a stockholder within the meaning of the statute in question, and that the court did not err in rendering judgment in his favor.

Judgment affirmed.

*Affirmed.*