IN THE MATTER OF THE APPLICATION OF EDWARD LESLIE FOR AN ORDER SETTING ASIDE ALLEGED ELECTIONS OF MATTHEW SWEETNAM AND OTHERS, AS OFFICERS AND DIRECTORS OF THE LESLIE BROTHERS MANUFACTURING COMPANY.

1. Under section 44 of the General Corporation act (*Rev.*, *p.* 184), which provides that "it shall be the duty of this court, upon the application of any person who may be aggrieved by or make complaint of any election [of managers or directors of a corporation], or any proceeding, act or matter in or touching the same, * * * and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to said Supreme Court to require," the inquiry before the court is limited to the consideration whether or not the election complained of has been conducted according to the statutory provisions.

2. In any complaint to the court of such an election or of any provisions touching the same, the grounds of complaint should appear in the application or affidavits, to the end that in the preliminary proceedings which give jurisdiction it appear what violations of the statutory regulations have occurred.

3. The registry of the stock of a stockholder is *prima facie* evidence of his qualifications for the office of director. His right to be a director can be impeached only by showing that the title of the stock was put in him colorably with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization and control of the company.

4. J. and E. were stockholders in the L. B. Manufacturing Company. Disputes arose between them, for the adjustment of which they resorted to arbitration, by agreement under seal executed April 20th, 1895. This agreement, among other things, authorized the arbitrators to decide which of said parties should sell to the other all his capital stock of said company, and the terms upon which said sale should be made,

with power to enforce their award by transfer and delivery to the person whom they should decide should purchase all of the capital stock of the person whom they should decide should sell. In compliance with the arbitration agreement, E. and J. each delivered to the arbitrators their certificates of stock duly assigned in blank. The arbitrators, by award dated April 23d, 1891, determined that E. should sell his stock to J., and thereupon they delivered the certificates of E.'s stock with the assignment thereon to J., and on the same day the transfer was recorded on the company's books. E., being dissatisfied with the award, filed a bill in Chancery against J. for a decree setting it aside, and directing J. to return to him the stock the latter deposited with the arbitrators. The result of this litigation was a decree setting aside the award and directing J. to return to E the said stock. The decree in Chancery was signed August 2d, 1893, and affirmed in the Court of Errors and Appeals June 18th, 1894. On July 26th, 1894, new certificates were issued by the company for his shares of stock to E. and delivered to him. From April 23d, 1893, to July 26th, 1894, E. did not appear on the company's books as a stockholder. The elections complained of were held May 16th, 1892, and July 3d, 1893. *Held,* that at these elections E. was neither qualified to vote nor to hold office as a director.

5. Where one is made a director of a corporation solely to make up the number of directors required by law, his right to hold such office cannot be impeached for fraud at the instance of one who was a consenting party to his admission into the company and his election to the office.

On rule to show cause why the election of directors of the company, held May 16th, 1892, and July 3d, 1893, should not be set aside.

Argued at November Term, 1895, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the applicant, *Robert H. McCarter.*

*Contra, John W. Griggs.*

The opinion of the court was delivered by

DEPUE, J.    Edward Leslie, a stockholder of the Leslie Manufacturing Company, a corporation of this state, made application to this court for an order setting aside the election

of directors and officers of the corporation, on the 16th of May, 1892, and July 3d, 1893.   The application was presented to the court at June Term, 1895, and a rule to show cause granted, returnable to the succeeding Term of November, with leave to take depositions.

The jurisdiction of this court to entertain and decide the subject-matter of this controversy is conferred by section 44 of the General Corporation act, which provides that " it shall be the duty of this court, upon the application of any person who may be aggrieved by or make complaint of any election [of managers or directors of a corporation], or any proceeding, act or matter in or touching the same,   *   *   *   and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to said Supreme Court to require."   *Rev., p.* 184.   This section is contained in the subdivision of the act which regulates elections of the officers of corporations, providing for the holding of such elections, prescribing the persons who shall or shall not conduct it, the inspection of the company's books by stockholders, the making out, prior to the election, of a complete list of all the stockholders entitled to vote, arranged in alphabetical order, and the production of such list at the election, the qualifications of persons entitled to vote, the qualifications for the office of director, &c.   The power and duty of the court, under section 44, concerns the regularity and consequently the validity of the election, in conformity with the statutory regulations; and in any complaint to the court of the election or of any proceedings touching the same, the grounds of complaint should appear in the application or affidavits, as in *McNeely* v. *Woodruff,* 1 *Gr.* 352, 355, to the end that, in the preliminary proceedings which give jurisdiction, it appear what violations of the statutory regulations have occurred.   In all the decisions of our courts under the section in question, the inquiry has been limited to the con-

sideration whether or not the election complained of has been conducted according to the statutory provisions.

Reference will be made only to such of the sections of the act as have the most important bearing on the disputes in this case.

Section 17 provides for the number of directors, not less than three in number, to be chosen annually, at such time and place as shall be provided by the by-laws of the company, to hold office for one year and until others are elected and qualified in their stead. The directors are to be chosen by the stockholders, and, by section 36, the books of the corporation are made the only evidence of the persons who are "the stockholders" entitled to vote for directors; and, by section 38, no share of stock shall be voted upon which has been transferred upon the company's books within twenty days next preceding such election. In order that "the stockholders" entitled to vote may be ascertained, the company's books containing the names of the stockholders shall be open for examination thirty days previous to the election, and a full, true and complete list of all the stockholders, with the number of shares held by each, shall be made out and be open to inspection at least ten days before the election, and shall be produced at the time and place of the election. *Rev.*, *p.* 183, §§ 36, 41. The qualifications of a stockholder, to entitle him to vote, are that he shall appear to be a stockholder on the company's books twenty days before the election. The qualification of a person to be elected director is that he shall be a *bona fide* holder of some of the stock of the company at the time of his election, and if, having been elected, he ceases to be a *bona fide* holder of stock, he shall thereupon cease to be a director. *Rev.*, *p.* 185, §§ 47, 48. The books of the corporation are made plenary and exclusive evidence of the right to vote at the election of directors, and a stockholder may be qualified to be a director and yet not be entitled to a vote at such election. *In re St. Lawrence Steamboat Co.*, 15 *Vroom* 530.

The facts that gave rise to this controversy are these: The applicant, Edward Leslie, and his brother, John S. Leslie,

were engaged in business under the name of the Rotary Steam Snow Plow Company, in which company Matthew Sweetnam was interested, and in September, 1889, was chosen vice president. Early in 1890 it was proposed to reorganize the company as a corporation, and on the 11th of January, 1890, a certificate of incorporation, under the name of the Leslie Brothers Manufacturing Company, was made, which was filed in the clerk's office of the county of Passaic on the 15th of January, 1890. In the certificate John S. Leslie, Edward Leslie and Matthew Sweetnam were named as corporators and the capital designated as $500,000, divided into five thousand shares of the par value of $100 each, of which two thousand two hundred and fifty shares were held by John S. Leslie, two thousand two hundred and fifty shares by Edward Leslie and five hundred shares by Sweetnam. The organization was completed at a meeting of the stockholders on the 23d of January, 1890, at which John S. Leslie, Edward Leslie and Sweetnam were elected directors, all the stockholders being present at the meeting and all the stock being voted upon for the directors elected, and John S. Leslie was chosen president; Edward Leslie, vice president, and Sweetnam, secretary and treasurer, and John S. Leslie, general manager; and certificates for stock, in the number of shares mentioned in the certificate of incorporation as held by the Leslies and Sweetnam severally, were issued and entered in the company's stock-book.

Subsequently, disputes arose between John and Edward, for the adjustment of which these two parties resorted to arbitration by an agreement under seal made and executed on the 20th of April, 1895. This agreement, after reciting that the two parties owned all the capital stock of the Leslie Brothers Manufacturing Company, in equal shares, and differences and controversies existed between them in relation to the conduct and management of said company and its business, which rendered it inadvisable for the parties longer to remain in joint control and ownership of said company, and both of said parties desiring that a separation of their cor-

porate interests should take place by the absolute retirement of one or the other of the parties from the management and control of the company, and being unable to agree upon the basis of settlement and retirement, and being willing to leave the terms of settlement to arbitrators, contained a covenant by the parties mutually to submit the matters in controversy and dispute to two arbitrators named, with power to decide and direct which of the said parties should sell to the other all his capital stock of said company, and the terms upon which said sale should be made, and how and when the same should be paid for, with power to enforce and carry into effect their decision and award by the transfer and delivery to the person whom they should decide should purchase all of the capital stock of the person whom they should decide should sell, and with power to assign, sell and convey any or all of the capital stock of the person whom they should award should purchase, in order to enforce the performance of the terms and conditions of purchase in accordance with their award, with a stipulation that both parties should deposit with the arbitrators all their capital stock in said company, duly assigned in blank, for the purpose of enabling the arbitrators to carry out and enforce the conditions of their award in accordance therewith.

The arbitration agreement contained a further covenant that the parties would perform and carry out the award and all the terms and conditions thereof as ordered and directed to be done; and in case of the failure of either of the parties so to do, the arbitrators were authorized and directed to perform for the parties, or either of them, the orders and directions of the award by the delivery of said capital stock to the person who, by said award, should be entitled thereto, upon his performing his part of said award, or by selling, assigning and transferring the capital stock of either party for the purpose of enforcing against him any part of said award which may require the sale and transfer of any stock in order to raise funds or for any other purpose to complete the purchase or payment directed to be made by such party.

In compliance with the arbitration agreement, John and Edward each delivered to the arbitrators their certificates of stock, duly assigned in blank. And although neither the corporation nor Sweetnam was a party to the arbitration, Sweetnam put in the hands of the arbitrators the certificate of the stock issued to him, with an assignment in blank thereon.

The arbitrators, by an award dated the 23d of April, 1891, adjudged and determined that Edward should sell and convey all the capital stock formerly held by him and placed in the hands of the arbitrators for disposal, and all his rights in the company, to John, and they delivered the certificates of Edward's stock, with the assignment thereon, to John, and on the same day the transfer of Edward's stock to John was recorded on the company's books. On the same day, the board of directors, consisting of John and Sweetnam, by a resolution, vacated Edward's office as vice president on the ground that he was no longer a stockholder.

Edward, being dissatisfied with the award, filed a bill in Chancery against John for a decree setting aside the award, and directing John to return to Edward the stock the latter deposited with the arbitrators or stock issued to John in lieu thereof. The course of this litigation will be found in *Leslie* v. *Leslie, 5 Dick. Ch. Rep.* 103 ; *S. C., Id.* 155 ; *S. C.,* 7 *Id.* 332. The result of this litigation was a decree setting aside the award and directing John to return to Edward the said stock. The decree in Chancery was signed on the 2d of August, 1893, and affirmed in the Court of Errors and Appeals on the 18th of June, 1894. On the 26th of July, 1894, new certificates were issued by the company for two thousand five hundred shares of stock to Edward and delivered to him.

From the 23d of April, 1893, until the 26th of July, 1894, Edward did not appear on the company's books as a stockholder, and from the first-mentioned date until the final decree in the Chancery suit, which was June 18th, 1894, the legal title in the stock was in John. At the election held May 16th, 1892, John S. Leslie, Sweetnam and John Berwick

were elected directors. They held office until the next election, held on July 3d, 1893, when they were again elected directors, under which election they would, by statute, hold office for one year and until their successors were elected. No election has been held since the day last mentioned, and the directors then chosen hold over only until a new election shall be held. The elections of 1892 and 1893 were held and conducted in all respects in conformity with the statute. At these elections Edward was neither qualified to vote nor to hold office as a director. These elections cannot be set aside on the score of irregularity or the violation of the statutory regulations.

The contention in behalf of the applicant is that the arbitration proceeding was devised or carried out fraudulently for the purpose of depriving him of his interest in the company. If this contention was sustained by the evidence and this court has jurisdiction to grant relief on such grounds, it would be impracticable at this time to restore the company's affairs to the condition they were in, in April, 1891, and put the applicant in the office he then held. The utmost the court could do would be to set aside the election under which the directors now hold office and order a new election. But there is no evidence that the arbitration agreement was obtained from Edward by any fraudulent or unfair means. The condition of affairs which made the retirement of one or the other of the parties from the management and control of the company was well known to both parties, and is stated in plain terms in the agreement, and the means by which the exclusion of the one or the other of the parties from all interest in the company are plainly expressed in the agreement. No suggestion has been made of misrepresentation or concealment in that respect, nor has any charge been made of unfairness in the selection of arbitrators. No evidence has been given tending to impeach the conduct of the arbitrators as fraudulent in making the award, or in delivering over to John the certificates of the stock issued to Edward in compliance with the arbitration agreement. The bill in the Chancery case

contained no charge of fraud, and the Chancellor's decree set aside and invalidated the award on two grounds—*first*, that the arbitrators exceeded their authority in including in their award previous dealings between the parties not within the submission, and also dealings between the complainant and the company, which was not a party to the arbitration ; and *second*, that the award was uncertain in that, although the price at which Edward should pay for his stock was fixed, the award did not fix with precision when and in what manner the price should be paid. The effect of the decree in Chancery was not to invalidate the award and all proceedings under it *ab initio.* The decree took effect as of the time it was signed, and could have no force in constituting Edward a stockholder and as such entitled to vote at the elections of 1892 and 1893, in the face of the statutory prescription that no stockholder shall be entitled to vote at an election unless he appears to be such upon the books of the company. The only ground on which the imputation of fraud on the part of John can be supported, is that, after the award, he accepted the assignment of Edward's stock notwithstanding Edward's protest, and that he had the assignment recorded on the company's books, and proceeded to have the affairs of the company adjusted as if the award was valid, and that he defended Edward's suit to set aside the award. These facts are inadequate to justify a conviction of fraud. Edward's loss of the control of the stock pending the Chancery suit was due to the stipulations and conditions contained in the arbitration agreement. His remedy at this time is by proceeding in the manner hereinafter indicated.

The directors elected in 1893 are in office, holding over in default of a later election. The applicant now, being a stockholder duly registered in the company's books, may apply for an election under section 46. That section contains a provision that "in all cases no share or shares shall be voted upon except by such person or persons who may have appeared on the transfer-books of the company to have had the right to vote thereon when the election ought to have been

held." The decree in Chancery was signed August 2d, 1893, and if executed would have given the applicant relief in season for the regular election of 1894; but the decree in affirmance on appeal was not signed until June 18th, and the new certificate of stock was not issued to the applicant until the 26th of July, which was too late for the election of 1894. The statute provides for the annual election of directors and a term of office for one year unless they are suffered to hold over (*Rev.*, *p.* 180, § 17), and the company's by-laws provide for an election of directors on the third Monday of May in each year, to serve for the ensuing year. The day fixed for the annual election in the succeeding year came on the third Monday of May, 1895. The applicant was a duly-registered stockholder. No election was held on that day, and at an election ordered for the default in the year 1895 the applicant will have the right to exercise his voting power in virtue of his interest as a stockholder.

Another ground on which this application is based is that Sweetnam and Berwick, elected directors at the election of 1893, were not *bona fide* holders of stock at the time of their election, and therefore disqualified to be elected directors. *Rev.*, *p.* 185, § 44.

Sweetnam, at the time of the arbitration, placed his certificates of stock in the hands of the arbitrators, with assignments in blank thereon. He testified that he did this out of friendship for the brothers, and in the hope that he might aid in the settlement of the difficulties between them. When the award was made, the certificates were returned to him, and he remains a stockholder on the books of the company. The registry of his stock is *prima facie* evidence of his qualifications for the office of director, and his right to be a director can be impeached only by showing that the title of the stock was put in him colorably with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization and control of the company. *In re St. Lawrence Steamboat Co.*, 15 *Vroom* 530. Sweetnam was one of the corporators of the company,

selected as such by the concurrence of both John and Edward. At the first election of directors he was elected by the votes of John and Edward, and a certificate for five hundred shares of the capital stock was made and recorded in the company's books in his name. He testified that he gave value for his stock in the interest he had in the old company and in the services he rendered to the new corporation. If he was made a stockholder and a director solely to make up the number of directors required by the statute, his right to hold that office is not impeachable for fraud, at least at the instance of the applicant, who was a consenting and concurring party to his admission into the company and his election to the office of director.

Berwick's right to hold office is upon a less tenable ground. He was made a stockholder by the transfer to him by Sweetnam of one share of stock. This transfer was made on the 23d of April, 1891, immediately after the promulgation of the award of the arbitrators. He testified that he held a share in the old company, for which he had given an equivalent, and that the share in the corporation was transferred to him for his former interest, and for the purpose of qualifying him for a director.

But it is not necessary to pursue this subject, as it will arise more directly in case of a new election.

The application is denied, and the rule to show cause is discharged.