CASPER, Respondent, vs. KALT-ZIMMERS MANUFACTURING
COMPANY and others, Appellants, and KALT and another,
Respondents.

*November 21, 1914—February 9, 1915.*

*Corporations: Transfers of stock: Restrictions: Corporate articles or
charter a legislative act: Mistake: Reformation: Amendment:
Waiver of charter provisions: Officers: Conspiracy: Secret prof-
its: Evidence: Sufficiency: Who may be directors: Holder of stock
in trust: Stock dividends: Recovery: Limitation of actions: Ap-
peal: Briefs: Disrespectful language: Striking from files.*

1. A provision in articles of incorporation that if any of the original
   stockholders wish to sell their stock they shall first offer it to
   the board of directors and give that board ten days in which to
   place it with the stockholders, is valid.
2. Whether a corporation be organized under a general law or by
   special act its charter is a legislative act and cannot be reformed
   or amended by the courts.
3. Articles of incorporation must be construed like other legislative
   enactments, and the testimony of the framers as to what was in-
   tended by the language used is not competent.
4. If a mistake was made in articles of incorporation, so that they
   do not express the intent of the incorporators or stockholders,
   the statutory method of changing or amending such articles is
   exclusive.
5. Waiver of a charter provision may validate an act as to which it
   was waived; but no waiver can be effectual to annul such a pro-
   vision or render it inoperative in the future.
6. Findings with reference to an alleged conspiracy between officers
   and directors of a corporation to discriminate against plaintiff
   in respect to authority, work, and salaries in the company are
   criticised as vague, unsatisfactory, and unsupported by any def-
   inite evidence.
7. Where an officer of a corporation is alleged to have made a secret
   profit in a purchase of land for it, and other property or equities
   in property were in part traded for such land or figured in the
   transaction, positive testimony of such officer that he paid
   $35,500 for the land—which was the price paid to him by the cor-
   poration—cannot be held to be contradicted by the mere fact
   that nine years after the purchase he was unable to state just
   how $1,247.83 of the amount was paid.
8. One who holds the mere legal title to stock in a corporation is a

stockholder within the meaning of sec. 1776, Stats., and may be chosen a director.

9. Where a stockholder claims that stock dividends had been declared but never received by her, and it appears that the corporation transferred the stock in question to other persons more than six years prior to the commencement of her action, her right to recover is barred. If such transfer was tortious she might, as soon as the wrong was committed, have brought an action for conversion or an action to compel reconveyance of the stock to her; and in such a case when the statute of limitations has run upon and bars the legal remedy it bars also the equitable remedy.

10. The provision of sub. 7, sec. 4222, Stats., that a cause of action for relief on the ground of fraud shall not be deemed to have accrued until the discovery of the fraud, relates to a fraud for which the sole redress is an action in equity.

11. Language used in a brief in this case is condemned as a flagrant violation of professional ethics and of the duty and respect which attorneys owe to courts; and the brief is stricken from the files.
KERWIN, J., dissents in part.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed in part; reversed in part.*

Action on the behalf of the plaintiff to adjudge void art. VIII of the charter of the defendant corporation; or in case it is held valid to reform it, and as reformed to declare it fully performed and no longer in force; to adjudge plaintiff the lawful owner of certain stock bought from the defendants *Kalt* and to direct its transfer to plaintiff on the books of the corporation; to declare plaintiff rightfully entitled to certain shares of the new stock issued by the corporation and to direct their transfer and delivery to him; to enjoin defendants from enforcing art. VIII during the pendency of the action; to oust the defendants *W. J. Zimmers, Jay Z. Greeley, Matthew Zimmers, Joseph P. Kalt,* and *Kathryn Zimmers* as directors and *Matthew Zimmers* as president of the defendant corporation; and to order an. election to fill the offices vacated by the judgment of ouster prayed for.

The defendants *Kalt-Zimmers Manufacturing Company,*

*Michael Zimmers* as secretary thereof and in his individual capacity, *Matthew Zimmers, W. J. Zimmers, Jay Z. Greeley,* and *Kathryn Zimmers* answered and by cross-complaint prayed for a judgment canceling the assignment of stock of *Joseph P. Kalt* and *Philip Kalt* to the plaintiff and directing a return thereof to them; and enjoining plaintiff and said. *Kalts* from selling or transferring said stock, and enjoining its transfer on the books of the corporation contrary to art. VIII of its charter.

The defendant *Clara Gellerup* by a cross-complaint sought to recover certain dividend stock or its value from the defendant corporation, *Joseph P. Kalt, Michael Zimmers,* and the plaintiff which she alleges was declared before she sold her stock to *Joseph P. Kalt* and *Michael Zimmers* in 1898, but which was never received by her.

During the trial the plaintiff amended his complaint and alleged undue influence on the part of *Michael Zimmers* over *W. J. Zimmers, Matthew Zimmers, Kathryn Zimmers,* and *Jay Z. Greeley* and a conspiracy between them to discriminate against plaintiff in reference to authority, work, and salaries in the. defendant company, and that they had drawn from the funds of the corporation unjust bonuses, excessive salaries, and secret profits; and this issue was tried.    Further facts are stated in the opinion.

The trial court signed findings of fact covering over thirty printed pages and entered judgment (1) declaring art. VIII void; (2) reforming it and declaring it terminated by limitation of time; (3) decreeing plaintiff to be the owner of the stock claimed by him; (4) ousting the directors above named and the president from their respective offices; (5) ordering an election of officers as prayed for, and dismissing the cross-complaints of the defendants *Michael Zimmers, W. J. Zimmers, Matthew Zimmers, Jay Z. Greeley, Kathryn Zimmers, Kalt-Zimmers Manufacturing Co., Michael Zimmers* as secretary thereof, and *Clara Gellerup,* with costs against the first

five in the sum of $370.43 and against *Clara Gellerup* in the sum of $76.97. From this judgment the defendants whose cross-complaints were dismissed appealed.

For the appellants *Kalt-Zimmers Manufacturing Company* and others there were briefs by *N. L. Baker* and *W. J. Zimmers,* and oral argument by *Mr. Baker.*

For the appellant *Clara Gellerup* there was a brief by *Doe & Ballhorn* and *H. L. Kellogg,* and oral argument by *Mr. George Ballhorn* and *Mr. Kellogg.*

For the respondent *Casper* there were briefs by *Austin, Fehr & Gehrz,* and oral argument by *G. G. Gehrz.*

For the respondents *Joseph P. Kalt* and *Philip Kalt* there was a brief by *Lyman G. Wheeler* and *R. S. Witte,* and oral argument by *Mr. Wheeler.*

The following opinion was filed December 8, 1914:

Vinje, J.    Upon this appeal we have had submitted for our consideration a printed case consisting of 1,384 pages in two volumes, a supplemental case of 93 pages,. and six briefs aggregating 712 pages. We were told upon the oral argument that the trial of the case occupied forty days. These facts are mentioned, not because they bear any necessary relation to the importance of the questions involved, but as an evidence of the fact that we have at least sensed the physical magnitude of the case. It is unfortunate that notwithstanding the number and bulk of the briefs submitted some of the more important questions upon which the case turns are not treated at all. This statement is not made by way of criticism, but as an explanation and perchance a justification why the opinion of the court does not accord the case that magnificent amplitude given it by counsel. It is believed, however, that all the legal questions and the evidence necessary to a correct disposition of the appeal have received that degree of attention to which litigants are justly entitled in every case. A brief outline of the issues and of their disposition by the

trial court has been given in the statement preceding the opinion. This will be supplemented by the recital of such additional facts as are necessary to a correct understanding of the legal questions involved.

The defendant corporation was organized in 1894 with a capital of $5,000 divided into fifty shares, since increased to $200,000, consisting of 250 shares of preferred stock and 1,750 shares of common stock, of which latter 1,350 shares .have been subscribed and paid for and were outstanding at the time plaintiff bought the stock he seeks to have transferred to him on the books of the corporation. Its articles of incorporation were signed and acknowledged by *Joseph P. Kalt, Philip Kalt,* and *Michael Zimmers.* Art. VIII thereof read:

"If at any time any of the original stockholders subscribers hereto desire to sell and dispose of their stock, said stockholder or stockholders shall first offer it in writing to the board of directors, stating price and terms, and give the board of directors ten days in which to place it with the stockholders. At the expiration of ten days if no stockholder has purchased and settled for same, said stockholder or stockholders shall have the right to sell to whomever will purchase upon the same sums and price for which it was offered to the board of directors."

In 1901 the plaintiff bought his first stock in the corporation and in 1903 he was elected vice-president, in which capacity and as a salesman he has since acted. September 20, 1911, he purchased from *Joseph P. Kalt* and *Philip Kalt* 413 shares of stock, which added to his previous holding of 262 shares gave him 675 shares. This was just one half of the total common stock then outstanding. The *Kalts* had not offered their stock to the board of directors as required by art. VIII, and the corporation refused to recognize the sale or transfer upon its books the stock sold.

1. Did the trial court err in declaring void the provisions of art. VIII requiring that the stock of the original subscribers should first be offered for sale to the board of directors?

This question is answered in the affirmative by the case of *Farmers' M. & S. Co. v. Laun,* 146 Wis. 252, 131 N. W. 366, and little need be added to what is there said on the subject. The personal element is as important in the make-up and management of a corporation as it is in almost every other undertaking. Restrictions, therefore, reasonably protecting incorporators or stockholders in their interests by permitting them first to purchase stock offered for sale, should be held lawful as promotive of good management and sound business enterprise.

2. After declaring the article void the trial court industriously, or through the industry of counsel, found that it was no part at all of the articles of incorporation; that it was inserted by. mutual mistake; that the article really intended and which in fact did constitute a part of the articles of incorporation read: "If at any time, *until the undersigned, Michael Zimmers, acquires one half of the outstanding stock of the company,* any of the original stockholders subscribers hereto desire to sell," etc., the words in italics being added; and that such article so amended had expired by limitation of time, since *Michael Zimmers* had acquired one half of the stock when the *Kalts* sold to plaintiff. This action of the trial court presents the question of the power of a court of equity to reform or amend the charters of corporations. For obviously the charter under which the corporation had existed for nearly twenty years was amended in an important particular by the insertion of the italicised words above quoted. Upon this question the briefs of counsel are silent, and so are the books as far as any direct authority is concerned, judging from the limited time for examination which we have had. It is, however, not surprising, for it seems a startling and novel use of equity powers. The charter of a corporation is a legislative grant—just as much so when incorporated under a general law as by special act. An amendment to a charter is a legislative act—just as much so when made in pursuance

of a provision in its charter or in a general law as by special act. *State ex rel. Att'y Gen. v. N. P. R. Co.* 157 Wis. 73, 147 N. W. 219; *Lord v. Equitable L. A. Soc.* 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. n. s. 420. In the latter case the court says:

"When the legislature authorizes a course of procedure whereby a charter may be acquired or amended, action in conformity thereto does not create the charter or make the amendment, but both come into existence through the operation of the statute. The amendment is the act of the legislature the same as the charter itself, and neither has existence except as conferred by statute."

So the amendment or reformation of a 'charter would be equivalent to the amendment or reformation of an act of the legislature. In other words, it would be a legislative act, and nonjurisdictional because outside the judicial field.

Aside from the considerations mentioned, a charter of a corporation stands upon a different footing than contracts between private parties. It is the organic law of the corporation, required to be filed with the secretary of state and with the register of deeds of the county in which the corporation is located. Sub. 7, sec. 1772, Stats. 1913. Amendments must also be filed. Sec. 1774. Thus a mode is provided whereby any one interested in a corporation as a prospective stockholder, creditor, or otherwise can ascertain definitely just what its organic law is, and govern himself accordingly. If it were subject to reformation or amendment by a court of equity there might be but little safety in examining a charter at any given time. Diligence and vigilance might become only pitfalls. In the present case art. VIII of the charter has been on file for nearly twenty years with the register of deeds of Milwaukee county and with the secretary of state, and during all that time it has spoken to all concerned in unmistakable terms on the subject of the sale of stock by the original stockholders. It must still con-

tinue. so to speak. The legislature has provided methods by which charters may be amended. A court of equity is not one of them. The legislative methods are exclusive.

An observance of the distinction between an amendment and a reformation does not help the case. That which needs reformation is not valid as it stands. Before it can become valid something must be added to or subtracted from it to make it conform to that which was intended. In the case of private contracts the supreme source of power to vitalize them is the concurrent intent of the parties. The contract grows out of and rests upon that. And courts of equity may in proper cases through evidence *dehors* the contract inquire into what it was intended to be and establish it accordingly. But charters are legislative acts, and such acts must be construed from their contents, contemporaneous history, and other legitimate aids to their proper construction. No evidence of the intent on the part of their framers or makers, either individually or collectively, is competent. *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. The result is that courts have power to construe but not to reform or amend legislative enactments. The charter when acknowledged, signed, and filed became by force of a statute a legislative act, and its framers were no more competent to testify as to what was intended by the language used than would be the framer of a bill passed by the legislature, or a member of the legislature itself. If a mistake is made in a charter so that it does not express the intent of the incorporators or stockholders, the statutory method of changing or amending it offers an adequate, speedy, and simple remedy.

3. It was shown by the evidence and found by the court that in a number of instances of the sale of stock by one stockholder to another previous to the sale of the *Kalt* stock to the plaintiff the provisions of art. VIII had not been complied with, and therefore, the argument runs, it has been annulled by waiver and is no longer operative. The same

lack of observing the distinction between a contract and a corporate charter is responsible for this argument. No doubt a waiver of a charter requirement may be resorted to in order to validate an act as to which the charter provision was waived. But to hold that the provisions of a charter can by any number of waivers become inoperative in the future would be equivalent to 'holding that a charter may be annulled by disregarding its provisions. Secs. 3240 and 3241, Stats. 1913, provide how charters may be annulled, and sec. 1789 how a corporation may be dissolved. Waiver by the corporation of charter provisions is not mentioned in these sections.

But the vital objection to holding that a charter provision may be annulled by previous waivers is that no one, upon reading a charter under which a corporation has existed for some time, could tell what provisions were in force and what had been annulled by previous conduct of the corporation. The reasons suggested why a court, even though it had jurisdiction, should not reform a charter apply more strongly here. A party interested in a corporation has a right to rely upon the fact that its charter is what it purports to be. He cannot be met with the statement that such and such provisions of it have been annulled through disregard in the past. Here again the statute as to how charters may be amended must control. To drop out a provision of a charter is an amendment of it. Any material change in the fundamental law of a corporation is an amendment. *State ex rel. Att'y Gen. v. Northern Pacific R. Co.* 157 Wis. 73, 147 N. W. 219.

4. The conspiracy issue has hardly standing room in the case. It was lugged in during the trial, no doubt, to round out the forty days or to discover if possible a new avenue of attack. No part of the judgment is based upon any of the findings made with reference to it, and the findings themselves are vague, unsatisfactory, and not supported by the

evidence in so far as any definite tortious act is concerned. They find that the defendants named

"have arbitrarily, wrongfully, and without just cause discriminated against said plaintiff in the apportionment and fixing of authority, work, and salaries in said company, and have withheld distribution of its earnings and profits, said defendants *Matthew Zimmers* and *Jay Z. Greeley* have drawn out of its funds and now retain excessive salaries and unjust bonuses, and said defendant *Michael Zimmers* has held, enjoyed, and retained and now holds his position and office in, and the direction, management and control of, said company and of its business at an unfair and excessive salary and other important and valuable benefits and advantages, and has drawn and now retains considerable sums of money by the way of excessive salaries and a profit secretly and wrongfully made by him in certain real-estate transactions for the purchase of said company's former factory site, in which he acted for the use and benefit and on behalf of said company."

This is the most specific finding there is on the subject. One wonders that an expenditure of forty days of trial produced no more definite results in the evidence, for it is no more specific than are the findings. As to the latter it should be stated, in justice to the trial judge, that he did not draw them. They were prepared for his signature by counsel for plaintiff. Their gravamen, except as to the charge of secret profits derived from securing the former factory site, is traceable directly to a disagreement in corporate management and as to the relative value of the services of the plaintiff and of the defendants. The salaries paid were voted in the regular and lawful manner and were paid as voted. That plaintiff now thinks that those of the defendants were too high is natural.

The nub of the factory-site purchase known as the Larkin deal is this: In 1904 the Larkin building was for sale and *Michael Zimmers*, with the consent of the officers of the corporation, bought it for the corporation, but bargained for and took title to the same in the name of his sister in order to

secure a better price and because it was thought best not to take title in the name of the corporation just then. He swears he paid $35,500 for the property and that was the price paid him by the corporation when it bought it. Upon the trial, occurring about nine years later, he was unable to account for how he paid Larkin $1,247.83 of the purchase price. He swears he paid it, and there is no evidence to the contrary. Other property was in part traded for the Larkin lot, and equities in property belonging to *W. J. Zimmers* also figured in the deal. His failure after such a long lapse of time to account for how the sum of $1,247.83 in a $35,500 deal was paid cannot be held to contradict his positive evidence that he paid Larkin in money or property the sum of $35,500.

5. The court found that *Matthew Zimmers, W. J. Zimmers, Kathryn Zimmers,* and *Jay Z. Greeley* were not *bona fide* stockholders, and therefore under the statute, sec. 1776, and the provisions of the charter, each alike requiring directors to be stockholders, they were ineligible to hold the office of directors. They were found to hold their stock in trust for *Michael Zimmers.* With the correctness of the finding that they held their stock in trust we are not concerned as far as their right to hold office is thereby affected, and that is the only issue upon this branch of the case. They were ousted from office by the judgment, and the president, *Matthew Zimmers,* was also held not entitled to the office, presumably because not a stockholder, though there is a finding that their continuance in office will materially hamper and injure the corporation in its business and growth and will result in irreparable loss to the plaintiff. But this finding is not based upon any tangible evidence. In face of the fact that the corporation has grown from a small concern with a capital of $5,000 in 1894 to one having a capital of $200,000 in 1910, practically without the addition of new stockholders or capital other than that earned by the company, and that it has

maintained its stock at more than par under the management complained of, mere conclusions and findings of general incompetency cannot avail.

It is settled by the great weight of authority in this country and in England that one who holds the mere legal title to stock is qualified to act as an officer of the corporation, though there is a charter provision or statute requiring officers to be stockholders.    3 Clark & Marsh. Priv. Corp. 2031, 2032 and cases cited; 2 Cook, Corp. (6th ed.) § 623 and cases cited; *In re St. Lawrence S. Co.* 44 N. J. Law, 529; *State ex rel. Rankin v. Leete,* 16 Nev. 242; *In re Argus P. Co.* 1 N. Dak. 434, 48 N. W. 347; *Pulbrook v. Richmond C. M. Co.* L. R. 9 Ch. Div. 610.    One who holds stock in trust for the express purpose of qualifying him as an officer is eligible.    Cook, Corp. (6th ed.) § 623; *In re Leslie,* 58 N. J. Law, 609, 33 Atl. 954.

A rule requiring that the equitable or beneficial interest in the stock should be in a person in order to render him eligible as an officer would exclude all trustees from acting as corporate officers and in a large measure debar them from investing trust funds in corporate enterprises because they could not adequately protect such funds by participating in the active management of the business.    The reason given for a contrary view is that officers of a corporation should be personally interested in its welfare, and that can be the case only when the legal and beneficial interest unite in the same person. We do not so consider it.    Trust duties are some of the most sacred duties there are, and the confidence reposed through them is seldom abused.    Even where stock is transferred for the express purpose of qualifying one to hold a corporate office, the person so transferring it is personally interested in the sound management of the corporation and would be unlikely to jeopardize his interest by placing the stock in incompetent hands.    The rule that merely a legal title qualifies is more in consonance with present business requirements and

is fraught with no undue hazard to stockholders. The defendants mentioned were improperly ousted from office.

6. *Clara Gellerup* subscribed and paid for nine shares of stock at the time of the organization of the corporation. Subsequently she secured an additional three and one-half shares, making twelve and one-half shares in all. On December 7, 1898, she sold all her stock for $1,375. Six and one-half shares thereof were assigned to *Joseph P. Kalt* and six shares to *Michael Zimmers*. Her husband acted as her agent throughout. He was the factory superintendent of the defendant corporation from the time of its organization until April, 1898, and was familiar with the financial affairs of the company while in its employ. From the time of the sale of her stock until 1912 *Mrs. Gellerup* made no claim against the corporation or any of its stockholders that anything was due her or that she had any interest in the corporation. Now she claims that in February, 1912, she discovered that stock dividends had been declared previous to the sale of her stock, but not transferred to her; that the corporation had wrongfully transferred her dividend stock to *Joseph P. Kalt* or to *Michael Zimmers* or to both. The proof supported her claim that stock dividends had been declared and that she had received no dividend stock, but was rather uncertain as to what had become of all of it. Most of it went to the persons named. The circuit court found that *Mrs. Gellerup,* when she sold her stock in 1898, intended to and did in fact sell all her interest in the corporation, including the dividend stock, and that if she did not she has been guilty of such laches as to bar her right to recover. We think the evidence warrants both findings. But it is immaterial whether or not it does. The six years' statute of limitations was pleaded in behalf of all adversely affected by her claim, and the proof shows that the corporation transferred the stock in question more than six years prior to the commencement of *Mrs. Gellerup's* action. Assuming that such transfer of stock was tortious she

had two remedies.    She could bring her action for damages
for the value of her stock wrongfully converted, or she could
bring an action to compel a reconveyance of her stock, or fail-
ing in that for damages.    She therefore had,' at the time the
wrong was committed, a legal remedy and an equitable rem-
edy for the same wrong.    In such cases the statute of limita-
tions runs upon the equitable remedy and bars that when it
has run upon the legal remedy.    The cause of action upon
the legal remedy accrued as soon as the wrong was committed,
namely, when the illegal transfer of stock was made.    The
provisions of sub. 7, sec. 4222, Stats. 1913, that a cause of
action shall not be deemed to accrue until the discovery of the
fraud, relates to a fraud for which the sole redress is an ac-
tion in equity.    *Buttles v. De Baun,* 116 Wis. 323, 93 N. W.
5; *Boyd v. Mut. F. Asso.* 116 Wis. 155, 90 N. W. 1086, 94
N. W. 171; *Pielsch v. Milbrath,* 123 Wis. 647, 101 N. W.
388, 102 N. W. 342; *Figge v. Bergenthal,* 130 Wis. 594, 109
N. W. 581, 110 N. W. 798; *Ott v. Hood,* 152 Wis. 97, 139
N. W. 762.    So the trial court properly dismissed her cause
of action with costs against her.

Some statements are contained in the opinion from which
inferences reflecting somewhat upon the length of the trial
and the bulk of the printed case and briefs may be justly
drawn.    It should not be inferred from them, however, that
the case has been ill prepared or slovenly presented.    The
briefs, though in our opinion needlessly long, are well ar-
ranged and indexed, methodical in their treatment, and have
been of great assistance to the court in ascertaining the legal
questions necessarily calling for adjudication.

*By the Court.*—Upon the appeal of the defendants *Kalt-
Zimmers Manufacturing Co., Michael Zimmers* as secretary
thereof, *Michael Zimmers, Matthew Zimmers, W. J. Zim-
mers, Jay Z. Greeley,* and *Kathryn Zimmers* the judgment is
reversed, and the cause remanded with directions to enter
judgment dismissing the complaint upon the merits; and to
enter judgment in favor of the above named defendants upon

their cross-complaints canceling the assignment of stock of *Joseph P. Kalt* and *Philip Kalt* to the plaintiff; directing a return thereof to them and enjoining its sale, or transfer on the books of the corporation, contrary to the provisions of art. VIII of its charter, with costs. The defendant *Clara Gellerup* will take nothing upon her appeal.

KERWIN, J. (*dissenting in part*). I do not agree with that part of the opinion of the court which holds, as I understand it, that a court of equity has no power to act upon articles of incorporation in any case because the charter of a corporation is a legislative grant.

The articles of incorporation constitute a contract between the incorporators, not a legislative act. True, when the incorporators make, execute, and file the articles in accordance with the statutes the articles of incorporation thereupon stand upon somewhat different grounds as regards the rights of the public and third parties dealing with the corporation on the faith of the articles filed than an ordinary contract.

It may be that there could be no reformation to the injury of third parties acting upon the faith of the articles filed. But the opinion seems to hold that in no case can relief be afforded in equity between the incorporators for fraud or mistake in the execution of the articles, whether the rights of others are prejudiced by the relief or not.

I think a court of equity can grant some kind of equitable relief in a proper case where the articles of incorporation do not express the contract of the incorporators.

TIMLIN, J., took no part.

The respondent moved for a rehearing. The motion was denied, without costs, on February 9, 1915, and the following opinion was filed on February 12, 1915:

VINJE, J. The motion for a rehearing upon the main case presents no new questions or arguments of sufficient im-

portance to merit a reconsideration of the case or a change in the mandate.

We construe the correspondence between the parties to constitute an agreement with reference to the taxation of costs as claimed by appellants, namely, that each party should pay for one copy of the transcript of the evidence and for one half of the original, and that the party prevailing upon the appeal should tax the costs for the copy paid for and for one half of the original; that is, the losing party should reimburse the other for the expense incurred for transcripts.     Costs will so be taxed.

By way of justifying their presentation of the case in this court, counsel for appellants, in their brief resisting the motion for a rehearing, say:

"They [counsel] have grown to believe (perhaps erroneously as a general proposition) that courts of equity recognize no limitations upon their powers, and that they enjoy most the finding of new plausible ways for the destruction of rights, however fortified by constitutions, statutes, or well established principles, if once it has been made to seem to them personally desirable to accomplish that end."

This is a severe arraignment of courts of equity, and it must have been intended to have special reference to this court or else it would not have been advanced as a reason why counsel pursued a certain method of presenting the case.     That this conclusion is just appears by their language, for they add, "That is why they were not content to submit the cause upon appellants' protection by such barriers of the law."     The language is a direct charge that, in the belief of counsel, this court enjoys most the finding of new plausible ways for the *destruction of rights*, however fortified by constitutions, statutes, or well established principles, if once it has been made to seem personally desirable to accomplish that end.     Did such a charge emanate from counsel defeated in an important and hotly contested case some allowance could perhaps be

made for the frailty of human nature smarting under defeat. But such is not the fact. Counsel were successful upon every proposition involved in the appeal. So their language must be considered as the calm, deliberate utterance of their belief upon the subject. So considered it presents a most flagrant violation of professional ethics and of the duty and respect which attorneys owe courts. It is regrettable enough that counsel entertain such a belief respecting this court. It is still more regrettable that they should so act as to make it necessary to put their belief on record, for no court worthy of the name would permit such a studied insult to pass unnoticed.

This court does not claim infallibility. It realizes that it is only a human agency and therefore may err. But it does claim that it is earnestly laboring to administer justice; to preserve, not to destroy rights; to so interpret and apply the constitution, statutes, and principles of law that they shall become the shield of right, not of wrong, and to conserve them in their spirit and integrity to the end that they may truly fulfil the purpose for which they were ordained and established. To accomplish this object to its fullest extent this court needs no unprofessional goad. Judicial labor is not lightened nor is judicial balance strengthened by such language as counsel has used. Hence it is reprehensible from every point of view and deserves the severest condemnation from bench and bar alike. Counsel for appellants will be allowed no costs either for printing brief or for attorney's fees upon the denial of the motion for a rehearing.

*By the Court.*——Motion for rehearing denied without costs; and appellants' brief upon the motion is ordered stricken from the files.