McDERMOTT, Appellant, vs. O'NEIL OIL COMPANY and others, Respondents.

*December 5, 1929—January 7, 1930.*

424

*Joseph E. Tierney* of Milwaukee, for the appellant.

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

STEVENS, J.   The business of the O'Neil Oil and Paint Company had been developed largely through the efforts of defendant George F. O'Neil to a point where its physical property was valued at approximately one million dollars. Mr. O'Neil announced that he had arrived at the age where he desired to retire from the active management of the business.   He made several unsuccessful efforts to sell the business.   Many of the stockholders expressed a desire to dispose of their interest in the business in case Mr. O'Neil retired from its active management.

All stockholders of the company (with the exception of the plaintiff, who held seven and one-half shares of stock) voted to sell the property and business of the company to Mr. O'Neil for a sum which was equal to the appraised value of the physical property of the company, part to be paid in cash and the balance in preferred stock of companies to be organized under the laws of Wisconsin.   In ascertaining the sales price no definite sum was included for the going value or good will of the business of the company.

The gasoline and accessory end of the business was transferred by Mr. O'Neil to the O'Neil Oil Company, a corporation whose stock was all owned by Mr. O'Neil.   He sold all but 500 shares of the common stock of the Oil Company to Mr. Fuller on deferred payments at a price that was sufficient to repay to Mr. O'Neil the exact sum which he had

paid for the physical property which was transferred to the O'Neil Company. Mr. O'Neil gave Mr. Fuller an option to purchase the 500 shares retained by him. If this option is exercised and the stock is all paid for at the price at which it was sold, the total amount received by Mr. O'Neil will be the same which he paid the stockholders of the old company for the property transferred to the Oil Company. In the event that this option is exercised and these payments made, Mr. O'Neil can secure no profit, secret or otherwise, from the sale of this portion of the business or the Oil and Paint Company.

The paint end of the business of the old company was transferred to the O'Neil Duro Company formed by Mr. O'Neil to take over the physical property used in that business. Mr. O'Neil became president of the Duro Company and continued to be its president down to the time of trial, receiving a salary of $15,000 a year. During the years 1926 and 1927 Mr. O'Neil received dividends on his stock in the Duro Company which were in excess of $40,000.

The trial court found that Mr. O'Neil had practiced no fraud on the stockholders of the old company; that he had received no secret profits in the transaction; and that the sale to him was for the best interests of all the stockholders of the company. Judgment was entered dismissing the action.

Officers and directors of a corporation "occupy a position of trust and confidence and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them." They "are not permitted to use their position of trust and confidence to further their private interests." *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961. "This court . . . has firmly maintained that officers of a corporation must treat stockholders with fidelity and good faith." *McMynn v. Peterson,* 186 Wis. 442, 467, 201 N. W. 272.

Mr. O'Neil, having purchased all of the assets of the corporation of which he had so many years been president, had the burden of establishing that he acted throughout with the utmost fidelity and good faith to protect the interests of the stockholders.

The first fact that challenges attention is that it appears without conflict that the price paid included nothing for the good will or going value of the business of the old company. That such good will had a substantial value in addition to the physical property cannot be doubted. Mr. O'Neil himself valued it at from $200,000 to $250,000 when he attempted to sell the business to others. But the fact that the price paid for the property of the old company included nothing for good will does not necessarily lead to the conclusion that plaintiff is entitled to judgment.

Under the provisions of sec. 180.11 of the Statutes of 1925, the holders of a majority of the stock had full power to sell all of the property of the company to Mr. O'Neil for such price and upon such terms with reference to payment as they might see fit to accept. No stockholder has a right to object to such sale, unless it was induced by some fraud, misrepresentation, or want of good faith on the part of Mr. O'Neil.

The resolution passed by a vote of all holders of stock, except the plaintiff, recited that the affairs of the company had been explained by Mr. O'Neil at great length, including his efforts and inability to sell and dispose of the company's business to others, and that it was "for the best interests of the company and its stockholders to sell and dispose of the said assets of the company to Mr. O'Neil" at the appraised value of its physical property.

The business was shown to be one for which a purchaser could not readily be secured. Its assets were of such a character that they would doubtless be subjected to rapid depreciation if the business was not continued as a going

concern. The vote of the stockholders to sell can readily be understood, as it appears that each holder of stock of the par value of $100 received $370 in cash and $266 in preferred stock.

It is doubtless true that Mr. O'Neil's announcement that he desired to retire from active business had great weight in inducing the stockholders to vote to sell the business. It is also true that up to the time of the trial he had not retired from the active management of the business of the Duro Company. But the announcement of his desire to retire cannot be made the ground for setting aside this sale, because the stockholders knew when they voted to sell the property to Mr. O'Neil that he would be obliged to manage it until such time as he could make other disposition of it.

But one other matter demands consideration. When the Duro Company was formed there was issued to Mr. O'Neil $50,000 of preferred stock in addition to common stock equal to the full value of the assets transferred by him to the Duro Company. Had he retained this preferred stock, Mr. O'Neil would have received $50,000 in the nature of a secret profit for which he might well be required to account to the plaintiff and other stockholders of the old company. But before this suit was begun all of this preferred stock was transferred to Mrs. O'Neil, who paid into the treasury of the Duro Company the full par value of this $50,000 of preferred stock. This proof established the fact that there was no such secret profit in the transaction as to give stockholders any right to compel an accounting by Mr. O'Neil.

The record presents a case where stockholders with full knowledge of the facts have determined to sell the property of the corporation in which they were interested at somewhat less than what appears to be its true value, when considered as a going concern. But there is no proof of

such fraud or breach of fiduciary duty on the part of Mr. O'Neil as will give any objecting stockholder the right to interfere with the sale deliberately made by the practically unanimous vote of all the stockholders.

*By the Court.*—Judgment affirmed.