GOTTSCHALK and others, Respondents, vs. AVALON REALTY COMPANY and others, Appellants.*

*May 23—June 22, 1946.*

---

\* Motion for rehearing denied, with $25 costs, on September 28, 1946.

80

For the appellants Avalon Realty Company, William C. Kirsten, J. Parish Lewis, George A. Schmitz, and Carl Ema there were briefs by *Gabel & Dineen,* attorneys, and *Brooke Tibbs* of counsel, all of Milwaukee, and oral argument by *Mr. Tibbs* and *Mr. George H. Gabel.*

For the appellant Abbie R. Silliman there was a brief by *Whyte, Hirschboeck & Minahan,* and oral argument by *Victor M. Harding,* all of Milwaukee.

For the respondents there was a brief by *Karon & Weinberg,* attorneys, and *Morris Karon* of counsel, all of Milwaukee, and oral argument by *Mr. Karon.*

For the intervening respondents there was a brief by *Affeldt & Lichtsinn,* attorneys, and *Eldred Dede* of counsel, all of Milwaukee.

RECTOR, J. Sec. 182.15 (1), Stats., provides that each stockholder of a corporation shall be entitled to one vote for each share of stock "Unless a provision to the contrary is inserted in the articles of incorporation and recited in each certificate for any share of stock issued by the corporation." Sec. 182.13 specifies that a corporation may in its articles authorize preferred stock and that it may provide "for denying or restricting the voting power of such preferred stock." It is required that the preferred stock certificates shall state all privileges accorded to and restrictions imposed upon such stock.

The first question is whether the provisions authorizing the holders of the first and second preferred stock to vote whenever default should exist in the payment of dividends after July 1, 1951, as specified, constitute a denial of the right to vote prior to that time. If they do, they constitute a provision "to the contrary" within the meaning of sec. 182.15 (1), Stats., and a denial of voting power within sec. 182.13. If they do not, there is no such denial or provision "to the contrary," and both the first and second preferred stockholders may vote in the transaction of corporate business.

We are of the view that the corporate articles deny to the first and second preferred stockholders the right to vote prior to the happening of the specified contingencies. The provision that such stock may vote upon the happening of such contingencies clearly implies that it may not until the contingencies occur. Any other interpretation of the language would render it superfluous and without meaning. We would not be justified in disregarding it. *Bank of Cashton v. La Crosse C. S. T. M. I. Co.* (1934) 216 Wis. 513, 257 N. W. 451; Restatement, Contracts, sec. 236 (a). The contention that the denial of the right to vote was not intended to become operative until July 1, 1951, and that thereafter the right should exist only upon the specified defaults is not, in our opinion, a permissible construction of the language employed.

As we see it, we have the choice of disregarding the language entirely or construing it as denying the right to vote until the happening of the specified contingencies.

The respondents argue that preferred stock is entitled to vote unless the right is expressly denied, and that it is not expressly denied by the language in question. Support for this position is found in 18 C. J. S., Corporations, p. 1243, in Cook, Corporations (7th ed.), p. 777, and in some cases cited to the text of those works. However, with one exception, none of the authorities deals with the situation here present, that is, the language required in order to deny the right to vote. The exception is *Rice & Hutchins, Inc., v. Triplex Shoe Co.* (1929) 16 Del. Ch. 298, 313, 147 Atl. 317, in which it was clearly indicated that the right may be denied by implication, such as by a provision that "The sole voting power shall reside in the holders of the common stock." The instances in which the question has arisen are cases where an express denial has been made, and it has been held that such a denial may be made.

It seems to us that such a denial may exist expressly or by necessary implication. A denial may exist under an express provision even though the denial may not be express. Such is the situation in this case. We agree that unless a denial is clearly manifested, it should not be given effect, but where, as here, it is clear, it should be given effect even though it is not express.

It is said that in *Casper v. Kalt-Zimmers Mfg. Co.* (1915) 159 Wis. 517, 149 N. W. 754, 150 N. W. 1101, we held a corporate charter to be a legislative act which cannot be reformed or amended by the courts and that a denial of voting rights to preferred stock will require the insertion of language which is not present. This is but another way of saying that meaning cannot exist by implication.

It is suggested that the contingencies upon which the first and second preferred stock may vote are not clear. Assuming

this to be so, that problem can be met when it arises. It does not constitute cause for saying that the language should be disregarded.

The second question is whether the directors or the voting trustees are entitled to sell the corporate property. As a general rule, in the absence of statute, a corporation cannot dispose of all its property without the unanimous consent of its stockholders entitled to vote, although there are certain exceptions which we do not find it necessary to discuss. The rule is subject to change by statute, 13 Fletcher, Cyc. Corp. (perm. ed.) secs. 5797, 5798, and has been changed in this state. Sec. 180.11, Stats., provides in part:

"(2) *Transfers of property.* Every corporation may, by a vote of a majority of the stock entitled to vote, sell and convey or authorize to be conveyed, all or any portion of the property owned by it, or mortgage or lease any such property whenever it shall be necessary for its business or the protection or benefit of its property.

"(3) *Same; exceptions.* But any corporation organized to deal in real property or in fixtures, improvements or chattels real, or to mortgage, pledge or dispose of the same in any manner whatsoever, may sell, mortgage, pledge or otherwise dispose of the same by instruments executed in the manner provided by section 235.19 or in such manner as shall be provided in the articles of incorporation, without further authorization by the members of any such corporation."

Sub. (2) has been construed to authorize the ordinary business corporation to dispose of its entire property by a vote of the majority of the stock entitled to vote. *McDermott v. O'Neil Oil Co.* (1930) 200 Wis. 423, 228 N. W. 481; *Consolidated Water Power Co. v. Nash* (1901), 109 Wis. 490, 85 N. W. 485. The language "whenever it shall be necessary for its business or the protection or benefit of its property" refers to the mortgage or leasing of the corporate property and not to its sale. Prior to 1927 the portion dealing with the mortgaging or leasing of property was set off by a semi-

colon instead of by a comma. The semicolon was removed in the 1927 revision. Ch. 534, Laws of 1927. In the light of this history a sale of corporate property is not limited to the ordinary transaction of corporate business.

Sec. 180.11 (3), Stats., constitutes an exception to the provisions of sub. (2) and is limited to corporations organized to deal in real property. The Avalon Realty Company is such a corporation. Sub. (2) provides for a sale of the entire corporate property, and there is no valid reason why sub. (3) should be limited to anything less. We are therefore of the opinion that the directors and officers of a real-estate corporation are entitled to dispose of all its property in the absence of a restriction on their authority in the corporate articles. There is no such restriction in this case.

This disposition of the case renders it unnecessary to discuss in detail the question whether under the voting trust the trustees may dispose of all the corporate property. We are of the view that they may. The trust agreement provides that the trustees may vote upon any and all questions which may arise at corporate meetings as fully and with the same effect as could the common stockholders. It may be that there is an implied denial of such power in the ordinary voting trust. *Re Application of Bacon* (1941), 287 N. Y. 1, 38 N. E. (2d) 105. However, it must be borne in mind that the original first preferred stockholders of the Avalon Realty Company became such for the purpose of salvaging their investments. The voting trust was intended to protect them in the conduct of corporate affairs since they alone had any considerable equity in the corporate assets prior to the reorganization. Ownership of a portion of the first preferred stock has been separated from the ownership of the original and substituted bonds, but a considerable portion of the first preferred is still identified with such bond ownership. Bearing in mind the predominant interest of this latter group in the corporate assets, the purpose of their membership in the

company and the purpose of the voting trust, it seems to us we ought not to imply any limitation in the language of the trust agreement that would deny them the authority as voting trustees to dispose of the corporate property at such time as they might deem it advantageous to their interests.

It is stipulated that no question exists in the case with respect to the fairness of the terms of sale of the property. However, the dismissal of the complaint with respect to enjoining such sale should be without prejudice to the right of the respondents to raise that objection if the circumstances warrant.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint as to the amended third cause of action.