FONTAINE, Appellant, vs. BROWN COUNTY MOTORS COMPANY and others, Respondents.*

*October 15—November 18, 1947.*

* Motion for rehearing denied, without costs, on January 13, 1948.

434

435

For the appellant there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *E. L. Everson.*

For the respondents there was a brief by *North, Bie, Welsh, Trowbridge & Wilmer* of Green Bay, and oral argument by *F. N. Trowbridge.*

RECTOR, J. The questions are:

1. Was the option agreement invalid because it was not authorized at a corporate meeting by a majority of the stockholders?

2. May a court of equity refuse specific performance upon the ground that it would be harsh and oppressive and, if so, was it properly refused under the facts of this case?

The company relies upon sec. 180.11, Stats., to establish that it could not validly enter into the option agreement without a vote of a majority of its stockholders authorizing such action. The statute reads:

"(2) *Transfers of property.* Every corporation may, by a vote of a majority of the stock entitled to vote, sell and convey or authorize to be conveyed, all or any portion of the property owned by it, or mortgage or lease any such property whenever it shall be necessary for its business or the protection or benefit of its property.

"(3) *Same; exceptions.* But any corporation organized to deal in real property or in fixtures, improvements or chattels real, or to mortgage, pledge or dispose of the same in any manner whatsoever, may sell, mortgage, pledge or otherwise dispose of the same by instruments executed in the manner provided by section 235.19 or in such manner as shall be provided in the articles of incorporation, without further authorization by the members of any such corporation."

There was no action by the stockholders authorizing execution of the agreement.

We do not agree with the contention that an ordinary business corporation may not transfer real property without a majority vote of its stockholders. At the common law a business corporation other than a real-estate corporation was not permitted to dispose of its entire property except by unanimous consent of the stockholders, if the corporation were a solvent going concern. The same was true of the conveyance of any part of the corporate property which was essential to the continuance of the corporate enterprise. The basis for the limitation of authority was that such a conveyance was a substantial abandonment of the business enterprise and contrary to the implied agreement of the stockholders that the corporate property would be devoted to the prosecution of corporate purposes. *Consolidated Water Power Co. v. Nash* (1901), 109 Wis. 490, 85 N. W. 485; *Gottschalk v. Avalon Realty Co.* (1946) 249 Wis. 78, 23 N. W. (2d) 606; 6 Thompson, Corp. (3d ed.) 380; 13 Fletcher, Cyc. Corp. (perm. ed.) 109. The purpose of sec. 180.11 (2), Stats., was to change the common-law rule. New York has so construed a similar statute. *Cf. Matter of Timmis* (1910), 200 N. Y. 177, 93 N. E. 522. The subsection applies only to those conveyances for which unanimous consent was required at the common law. To the extent that corporate conveyances at the common law did not require unanimous consent, the statute is inapplicable and the common law remains in effect. *Matter of Timmis, supra.* Compare also, *Marvin v. Anderson* (1901), 111 Wis. 387, 87 N. W. 226.

Execution of the option agreement by the president and secretary of the company was in accordance with statutory requirements. Secs. 235.50, 235.19, Stats. A presumption that the agreement was authorized arose from the regularity of its execution. *Marvin v. Anderson, supra.* The presumption was not rebutted by proof that the stockholders had not authorized it. A majority vote would be required only if the property involved were the entire property of the corporation

or a part essential to the continuance of the corporate enterprise. There is no such showing. The directors of a corporation may authorize conveyances in the ordinary pursuit of the corporate business. 14A C. J., p. 415. The option agreement purports to carry the authorization of the directors. There is no showing that they did not authorize it.

Should specific performance have been denied upon the ground that it would be harsh, oppressive, and inequitable? The trial court was of the opinion that when the appellant first observed the construction of the building she must have inferred that the company's officers had forgotten the option. It said that, possessing such knowledge, she could not sit by, permit the company to proceed with the improvement, and invoke the aid of a court of equity to compel performance of the agreement.

We agree with the rule applied by the trial court, but we disagree with its application to the facts. It is established in this state and in equitable jurisprudence generally that specific performance will not be granted where the result would be oppressive, harsh, or unjust. *Mulligan v. Albertz* (1899), 103 Wis. 140, 78 N. W. 1093; *Gloede v. Socha* (1929), 199 Wis. 503, 226 N. W. 950. While facts establishing the injustice of the remedy generally arise out of the inception of the contract sought to be enforced, it is not necessary that such be the case. Subsequent events or a change of circumstances may so alter the situation as to render specific performance inequitable. Pomeroy, Spec. Perf. (3d ed.) sec. 186; *Willard v. Tayloe* (1869), 75 U. S. 557, 19 L. Ed. 501. But any inequity that would result from specific performance of the agreement under consideration would not, in our opinion, arise out of the failure of the appellant to communicate with the company upon learning of the construction. The relations between the parties were strained by reason of litigation arising out of the lease, and she may well have supposed that the officers of the company had found some method calculated to defeat her rights

under the option agreement. The inequity—and we think there would be inequity—in ordering performance of the contract according to its terms arises out of other factors. Performance would give the appellant the benefit of a bargain which she did not make and inflict upon the company a substantial loss. The loss, to be sure, would be occasioned by lack of proper diligence on the part of the company's officials, but equity may nonetheless take the result into consideration in determining whether the contract will be enforced. *Woldenberg v. Riphan* (1918), 166 Wis. 433, 166 N. W. 21.

It is a corollary of the rule to which we have referred that if the plaintiff is not guilty of inequitable conduct and if the granting of equitable relief can be framed in such a way as to avoid injustice to the defendant, specific performance should be decreed. *Willard v. Tayloe, supra.* Appellant may have elected to exercise her option even though construction of the building had not been commenced. The property, exclusive of the improvement, may have appreciated in value. She is entitled to the benefit of any such appreciation.

We are of the opinion that specific performance should be granted upon condition that appellant pay the option price plus such appreciation in value to the appellant as the court may determine resulted from the improvement, not exceeding its cost, but reserving to the company the option of removing the improvement within a specified time. The decree should be so framed as to dismiss the complaint if the appellant elects not to pay any increased amount.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with the opinion.